MONSANTO COMPANY, Jules Pinsky,
Albert E. Adakonis, and Alvin R.
Nielsen, Appellants,

v.

Ernst KAMP, Karl Jahn, and Edward J.
Brenner, Commissioner of Patents,
Appellees.

No. 19171.

United States Court of Appeals
District of Columbia Circuit.

Argued May 27, 1965.

Decided July 22, 1965.

Petition for Rehearing En Banc
Denied Oct. 7, 1965.

Fahy, Circuit Judge, dissented.

Mr. W. L. Benedict, Washington, D.
C., with whom Messrs. James P. Burns
and Peter H. Smolka, Washington, D. C.,
Herbert B. Roberts, Springfield, Mass.,
were on the brief, for appellants.

Mr. Paul M. Craig, Jr., Washington,
D. C., for appellees Kamp and Jahn.

Mr. Clarence W. Moore, Sol. U. S. Pat-
ent Office, for appellee Brenner.

Before PRETTYMAN, Senior Circuit
Judge, and FAHY and BURGER, Circuit
Judges.

PRETTYMAN, Senior Circuit Judge.

This is an appeal from an order of the
United States District Court for the Dis-
trict of Columbia, which denied a pre-
liminary injunction in a patent case.
The controversy concerns a phase of pro-
cedure in patent cases. We think the
court should have issued the injunction.
Its order must therefore be reversed.

Appellant Monsanto Company was the
owner of a patent.[1] Appellees Kamp, et
al., applied for a patent on the same sub-
ject matter. As a matter of fact they
copied some of the claims in the outstand-
ing patent and incorporated them in an
application. The Patent Office declared
an interference, and the matter went to
the Board of Patent Interferences in
the Patent Office.[2] That Board declared

1. By assignment from the assignee of the
original patentees, Pinsky, et al., by
name. The patent issued April 15, 1958.

2. 35 U.S.C. § 135 (1958 ed.).

Kamp, *et al.*, to be the prior inventors. Monsanto appealed to the Court of Customs and Patent Appeals.[3] Kamp, *et al.*, filed a notice, as the statute permitted them to do, to have all further proceedings conducted by way of a civil action *de novo* in the District Court.[4] Accordingly a complaint was filed in that court by Monsanto against Kamp, *et al.*, and the prior appellate proceeding was dismissed. On the same day it filed its complaint, Monsanto filed a motion for a preliminary injunction, reciting a custom of the Commissioner of Patents to issue a patent to the prevailing applicant in an interference proceeding, regardless of the pendency of an action in court involving the issuance of the same patent. The trial court denied the motion. This appeal followed.

The controversy revolves about Section 135, Title 35, United States Code, which reads:

"Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be. The question of priority of invention shall be determined by a board of patent interferences (consisting of three examiners of interferences) whose decision, if adverse to the claim of an applicant, shall constitute the final refusal by the Patent Office of the claims involved, and the Commissioner may issue a patent to the applicant who is adjudged the prior inventor. A final judgment adverse to a patentee from which no appeal or other review has been or can be taken or had shall constitute cancellation of the claims involved from the patent, and notice thereof shall be endorsed on copies of the patent thereafter distributed by the Patent Office.

"A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted."

The problem is whether the Commissioner of Patents may or may not issue a patent while a civil action concerning the issuance of that patent is pending in court; the circumstances being that the Board of Patent Interferences has declared an applicant for a patent to be the prior inventor over the owner of an outstanding patent and the applicant thus successful has compelled his adversary to proceed by a civil action in court.

We look at the statute as above quoted. The opening clause emphasizes by specificity of reference that there is a difference between an application for a patent and an unexpired patent. It refers to the situation where a new application for a patent would interfere with either a pending application or an existing ("unexpired") patent; the statute is specific in this double description. It further emphasizes the point by directing the Commissioner to give notice "to the applicants, or applicant and patentee, as the case may be." The legislative draftsman could hardly have made clearer his understanding that a newly filed application might well interfere with claims in either of two postures—(1) in an outstanding patent or (2) in an application pending but not yet ripened by issuance. The statute then refers to the board of patent interferences. It says that if its decision is adverse to "the claim of an applicant," the claim is to be considered refused; and it continues that the Commissioner may issue a patent to a successful applicant. These are clear and simple, even though not exhaustively complete, provisions as to applications. The statute continues, then, to treat an

---

3.  35 U.S.C. § 141 (1958 ed.).

4.  35 U.S.C. §§ 141, 146 (1958 ed.).

outstanding patent which is found not to have been the prior invention of the matter involved. The statute says that a final judgment "adverse to a patentee" shall constitute cancellation of the patent's claims. Thus the statute provides for "refusal" of the claims of an unsuccessful application and "cancellation" of the claims of an outstanding patent when those claims are unsuccessful under attack. Thus the statute maintains the differentiation between an application and an existing patent.

Three additional features of this statutory situation are pertinent. (1) The statute provides for cancellation of the claims in an existing patent only when there has been "[a] final judgment * * * from which no appeal or other review has been or can be taken". (2) The statute makes no specific provision as to what happens pending the decision of a court if the contest involves an outstanding patent. (3) If the Commissioner issues a patent to a new applicant even though there is a patent outstanding on the subject matter, obviously two patents would be outstanding at the same time on the same subject matter. This is a contradiction to the whole thesis of patent issuance. Indeed the constitutional grant of power to the Federal Government is couched in terms of exclusivity.[5] Of course a duplication of a patent grant may upon occasion occur by accident, but it cannot be a valid feature of governmental program.

■ We are of opinion, therefore, that the Commissioner should not issue a second patent where an existing patent is outstanding and the cancellation of its terms cannot be effectuated until termination of an action pending in court.

The foregoing is not in conflict with Monaco v. Watson.[6] We there dealt with a contest between two applicants, and we applied the statute exactly as written and as discussed hereinabove.

■ The Commissioner says the "operative words" of the statute draw no distinction between an applicant and a patentee. It seems to us the statute draws a difference. He also refers to our language in *Monaco*, which in turn refers to withholding a patent, etc., but in that case there was no outstanding patent, whereas in the present case there is one. The Commissioner says a patent is a creature of statute and quotes us as saying that a patent is purely statutory. So it is, in the sense in which we were there talking. But the power to issue patents is a power conferred specifically by the Constitution. It is subject to the terms of that grant, which was to secure to inventors "the exclusive right" to their inventions. Assuming, *arguendo,* Congress has some power with respect to issuance of a patent in some circumstances where one patent is already outstanding, Congress has not authorized a second patent in the circumstances shown here.

Kamp, *et al.,* argue to us that the public interest dictates the early issuance (and thus the early termination) of patents; and from that premise they conclude that the claimed patent should issue to them (*i. e.,* Kamp, *et al.*) forthwith. The fallacy in the progress from that premise to that conclusion is obvious. A patent has been issued and was running for some years before Kamp appeared on the scene; thus, according to this premise, the appearance and application of Kamp, *et al.,* delaying the termination of the period of public exclusion from this subject matter, were against the public interest. Certainly a further seventeen-year delay is not dictated by the premise stated.

■ It is suggested to us that an examination of the legislative history of the statutes relating to procedure in patent cases indicates that Congress intended the issuance of a second patent in a situation such as the one presently at bar. This history is a long, extremely

---

5. See U.S.CONST. art. I, § 8, cl. 8.

6. 106 U.S.App.D.C. 142, 270 F.2d 335 (1959).

involved, technical affair, beginning in 1870. Since the words of the statute, as they presently appear in the Code, seem to us to be clear, we are not justified in deducing a different meaning from legislative history. However, because while the statute is clear it is not specific, we note what the Congressional references indicate. Principally it appears that between the years 1927 and 1939 there were in the Code [7] two sentences which provided in terms that the issuance of a patent should be withheld pending the termination of the court proceeding. These sentences were dropped in 1939.[8] The Committees mentioned the matter in their reports. The Senate Report said:[9] "But even when appeal to the court is taken, in many cases it is possible to grant a patent immediately to the winning party without prejudicing the appeal, and in such cases the Commissioner can so grant the patent immediately." The reference is apt when applied to a case of two applicants, and perhaps in unusual cases, but it is a far cry from a declaration of power in the Commissioner in any and all cases; indeed the language "in many cases it is possible" negates instead of affirms a general power. We therefore hold that, since the Commissioner of Patents has issued a patent valid on its face, he is not free to take action adverse to the validity of that patent while its validity is being litigated in the United States courts.

Reversed.

FAHY, Circuit Judge (dissenting):

There is a factual difference between this case and Monaco v. Watson, 106 U.S. App.D.C. 142, 270 F.2d 335, as pointed out by the court, in that here a patent had issued previously whereas only competing applications were involved in *Monaco*. Nevertheless, the construction given by the Commissioner to 35 U.S.C. § 135, under which a patent could be issued by him in this case, is a reasonable one which I think we should accept.

Were authority to issue the patent to Kamp *et al.* not found in Section 135 it would not follow that appellants would be entitled to a preliminary injunction to restrain the Commissioner from issuing the patent to Kamp *et al.*, who the Patent Office has decided in the interference proceedings are entitled to priority of invention, thus deciding also that appellants are not entitled to the patent they hold. In this situation it was not incumbent upon the District Court to stay the hand of the Commissioner and enjoin him by preliminary injunction from taking the step he had decided the law permits, even though the law might not require it. There might be cases where the public or private interest, or both, would be properly served by withholding issuance of a patent to one found entitled thereto if a patent for the same invention were extant. This does not appear to me to be such a case at this stage of its history. No irreparable injury to appellants is shown to warrant a preliminary injunction now. The efficacy of the court proceedings to settle the controversy would not be impaired by our affirmance of the court's denial of the injunction.

The exclusive right to their discoveries granted by the Constitution to inventors, referred to in the majority opinion, presupposes that the claim of discovery is valid, the question still to be decided by the court in this controversy.

7. REV.STAT. §§ 4903, 4911.

8. Act of Aug. 5, 1939, ch. 451, §§ 1, 3, 53 STAT. 1212.

9. S.REP. No. 877, 76th Cong., 1st Sess. 2 (1939).