## CELANESE CORPORATION, Appellant,

v.

### Edward J. BRENNER, Commissioner of Patents, Appellee.

### No. 22093.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 26, 1968.

Decided Nov. 25, 1968.

Certiorari Denied April 28, 1969.

See 89 S.Ct. 1590.

Mr. James P. Burns, Washington, D. C., with whom Messrs. W. L. Benedict and Platon N. Mandros, Washington, D. C., were on the brief, for appellant.

Mr. Raymond E. Martin, Atty., United States Patent Office, with whom Mr. Joseph Schimmel, Solicitor, United States Patent Office, was on the brief, for appellee.

Before DANAHER, WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from an order granting the motion of the Commissioner of Patents to dismiss a complaint that sought to establish authority in the Commissioner to reissue the patent of plaintiff Celanese Corporation (Celanese) notwithstanding the pendency of a sepa-

rate civil action brought by E. I. duPont de Nemours and Company (Dupont) in the District Court for the Southern District of New York to review a Patent Office priority determination in favor of Celanese. The District Court's grant of the motion was based on Monsanto Co. v. Kamp, 123 U.S.App.D.C. 365, 360 F.2d 499 (1965). We affirm.

Dupont is the owner of the "Owens" patent issued December 18, 1962, relating to the coating of a moving surface with a plastic film. Celanese is owner of the "Vaccaro" patent issued March 26, 1963, which deals with the same matter. On December 16, 1963, after it was discovered that the disclosures made by Vaccaro would support a claim similar to Claim 13 of the Owens patent on the coating process, Vaccaro filed a reissue application under 35 U.S.C. § 251 (1964) for a patent including this claim. In October of 1964, the Patent Office declared interference between the Vaccaro reissue application and the Dupont patent, and on November 29, 1967, the Board of Patent Interferences awarded priority to Vaccaro.[1] Thereafter, Dupont filed its action against Celanese under 35 U.S.C. § 146 (1964) for a review of this decision. Celanese petitioned the Commissioner of Patents to return its reissue application to the proper examining group "for immediate reissuance of a patent." When the petition was refused on the basis of Monsanto, Celanese brough the action now before us.

Both Monsanto and the present case turn on the interpretation of 35 U.S.C. § 135 (1964).[2] Section 135 authorizes the Commissioner to issue a patent to the applicant adjudged to have the priority where his dispute is with another applicant.[3] In Monsanto this court held that a different treatment was intended by § 135 for disputes involving an existing patent as contrasted with disputes involving only applications. However, the court in Monsanto felt that the statute did not authorize the issuance of a patent to an applicant, though victorious in the Patent Office, where his dispute is with a patentee whose contention is still pending in court, where review has been sought of the interference ruling. The court reasoned that only a final judgment cancels the prior patent claim, and Congress did not intend the purposeful issuance of two patents for the same art.[4]

---

1. Vaccaro had an earlier application date of December 31, 1956, than Owens, who applied on May 3, 1960.

2. Section 135 read in pertinent part:
   § 135. Interferences

   (a) Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be. The question of priority of invention shall be determined by a board of patent interferences (consisting of three examiners of interferences) whose decision, if adverse to the claim of an applicant, shall constitute the final refusal by the Patent Office of the claims involved, and the Commissioner may issue a patent to the applicant who is adjudged the prior inventor. A final judgment adverse to a patentee from which no appeal or other review has been or can be taken or had shall constitute cancellation of the claims involved from the patent, and notice thereof shall be endorsed on copies of the patent thereafter distributed by the Patent Office.

3. Monaco v. Watson, 106 U.S.App.D.C. 142, 270 F.2d 335 (1959).

4. See 123 U.S.App.D.C. at 367–368, 360 F.2d at 501–502:

   If the Commissioner issues a patent to a new applicant even though there is a patent outstanding on the subject matter, obviously two patents would be outstanding at the same time on the same subject matter. This is a contradiction to the whole thesis of patent issuance. * * *

   We are of opinion, therefore, that the Commissioner should not issue a second patent where an existing patent is outstanding and the cancellation of its terms cannot be effectuated until termination of an action pending in court. * * * Assuming, arguendo, Congress has some power with respect to issuance of a patent in some cir-

The present case is similar to *Monsanto* in the critical aspects: (1) an applicant has copied claims from an outstanding patent giving rise to an interference;[5] (2) the Board of Patent Interference found priority in the applicant; (3) the defeated patentee sought review in a § 146 civil action; and (4) the propriety of the Commissioner's issuance of a second patent is in question.

The present case differs from *Monsanto* in one respect. It involves not an original applicant, but a reissue applicant, and as a result hardships may arise. First, since the date of the original patent is used for the reissue patent,[6] the patent period is running during the pendency of the litigation without giving the reissue applicant protection for his new claims. Applicant also is concerned, lest prior to the grant of the reissue patent, other parties obtain intervening rights under 35 U.S.C. § 252 (1964) for claims not in the original patent but which would be protected by the reissue patent. Section 252 provides that any party who, prior to the effective date of the reissue patent, made, purchased, or used an item, which is protected for the first time by the reissue patent, may continue, after its issuance, to use the item or sell it to others for use or resale.

While *Monsanto* said that "perhaps in unusual cases" a second patent might be issued pending the outcome of a suit reviewing the validity of an outstanding patent, we do not feel that Celanese has here made out such an "unusual case." Perhaps fraud by the patentee or a glaring error on the part of the Patent Office would be such an "unusual case." But the source of the problem here appears to be the failure of Vaccaro to make the proper "process" claim for his patent either in 1956 with his application, or in the three months between the December 1962 date of the Owens patent and the March 1963 Vaccaro patent date, when Claim 13 of Owens for the same "process" was of record. The failure of Vaccaro to add this "process" claim to his original "device" claims contributed to the situation wherein these two inventions came to be classed as different arts and assigned to different examining areas, and the Patent Office did not discover the interference until the reissue application finally copied Claim 13 of the Owens patent.

We do not doubt that Celanese may argue that certain equitable considerations could be recognized which might predicate a different result, but the injuries experienced or feared by Celanese are best considered, in our opinion, by the District Court where the parties are involved in litigating the review of the interference ruling. An expeditious disposition of that case would of course limit any actual or potential damages or injuries of the kind noted by appellant. We also presume that the District Court in New York may, in the exercise of sound discretion and as an incident to the maintenance of the pending action by Dupont, fashion appropriate restitutionary relief to Celanese for royalties or profits accrued by Dupont during the period required for litigation, or take other appropriate protective action, assuming and conditioned of course upon a final ruling in favor of Celanese.

We think sound doctrine lies in avoiding simultaneous issuance of two conflicting patents by an administrative or executive agency, and instead remitting

---

cumstances where one patent is already outstanding, Congress has not authorized a second patent in the circumstances shown here.
* * * We therefore hold that, since the Commissioner of Patents has issued a patent valid on its face, he is not free to take action adverse to the validity of that patent while its va-lidity is being litigated in the United States courts.

5. Here there is a reissue applicant instead of an original applicant. 35 U.S.C. § 251 (1964) applies all but one of the provisions of Title 35 applicable to original applications to reissue applicants.

6. *See* 35 U.S.C. §§ 251, 252 (1964).

the parties presenting equitable considerations to the flexible powers of a court of equity. These powers are at summit when the public interest is involved.[7]

Affirmed.

---

7. *See* Virginian Ry. Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937). The problem would seem to involve not only the private conflict between Dupont and Celanese but a public interest (a) in not permitting royalties or profits made possible by Congress in case of a patent monopoly to accrue to someone else, (b) in avoiding incentives for instituting or protracting litigation.

We do not consider whether 35 U.S.C. § 252 (1964) grants protection to an intervening right asserted by someone who was violating an outstanding patent (here, the Dupont patent) without consent of the patentee.