See also D.C., 309 F.Supp. 29, D.C., 291 F.Supp. 428.

E. I. du PONT de NEMOURS & COM-
PANY, Plaintiff,

v.

CELANESE CORPORATION, a corporation, Columbia Ribbon & Carbon Mfg. Co., Inc., a corporation and Angelo Vaccaro, Defendants.

No. 68 Civ. 723.

United States District Court,
S. D. New York.

May 5, 1970.

Ward, McElhannon, Brooks & Fitzpatrick, New York City, for plaintiff; by Joseph M. Fitzpatrick, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendants.

## OPINION

EDELSTEIN, District Judge.

Plaintiff, E. I. duPont de Nemours & Company (hereinafter duPont), has brought this action pursuant to 35 U.S.C. § 146 (1964)[1] to obtain a judicial determination of an issue of priority of invention. The court presently has before it a motion by defendant Celanese Corporation (hereinafter Celanese) asking that duPont be required to post a bond obligating it to indemnify Celanese for the damages which the latter might suffer as a result of the commencement and maintenance of this action. The propriety of granting this relief is a question of first impression.

The right to exploit a process for coating a moving surface with plastic film is the spoil over which the parties to this action are locked in combat. DuPont is the owner, by assignment from John Edward Owens, of a patent covering this process, which patent was applied for on May 3, 1960, and issued by the United States Patent Office on December 18, 1962. Celanese is the owner of a patent which was issued to defendant Angelo Vaccaro on March 26, 1963.[2] As originally issued, the Vaccaro patent did not claim the process in issue, but on December 16, 1963, Celanese timely filed an application pursuant to 35 U.S.C. § 251 (1964)[3] for reissuance of the Vaccaro patent so as to include the process claimed by duPont. An interference proceeding[4] between Cel-

[1]. This section in part provides that:

Any party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided.

[2]. Defendant Vaccaro assigned this patent to defendant Columbia Ribbon and Carbon Manufacturing Co., Inc., which in turn assigned the patent to Celanese.

[3]. This section, in relevant part, provides as follows:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by reason of a defective specification or drawing, or by reason of the pattentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

[4]. 35 U.S.C. § 135(a) (1964) provides as follows:

Whenever an application is made for a patent which, in the opinion of the Commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be. The question of priority of invention shall be determined by a board of patent interferences (consisting of three examiners of interferences) whose decision, if adverse to the claim of an applicant, shall constitute the final refusal by the Patent Office of the claims involved, and the Commissioner may issue a

anese's reissue application and duPont's patent was thereafter instituted in order to determine the priority of invention as between Vaccaro and Owens. The Board of Patent Interferences convened for this matter subsequently decided in favor of the Vaccaro claim. On a motion for reconsideration the Board adhered to its decision. Then, this action seeking *de novo* review of the Board's determination was commenced.

A prevailing applicant in an interference proceeding ordinarily is entitled to have the patent applied for (here a reissue patent) issued promptly.[5] In this instance, however, Celanese's reissue patent has not been issued. Although the decision of the Board of Patent Interferences was adverse to duPont, duPont, nevertheless, retains the right to exploit the patent held by it until such time as this action is ultimately determined.[6] Thus if Celanese were to be granted a reissue patent at this time there would be outstanding two separate patents applicable to the same art. In Monsanto Co. v. Kamp, 123 U.S.App.D. C. 365, 360 F.2d 499 (1965), the Court of Appeals, to avoid this "contradiction to the whole thesis of patent issuance," 360 F.2d at 501, held that the Commissioner of Patents was not authorized to issue a patent to an applicant who prevails over a patentee in an interference proceeding so long as there is pending a civil action in which the result of the interference proceeding is being challenged. Undaunted by this holding of the Court of Appeals, Celanese has strenuously attempted to obtain immedi-

ate issuance to it of a reissue patent. Initially a petition to this end was addressed to the Commissioner of Patents. This petition was denied on the basis of *Monsanto*. Contending that its case is distinguishable [7] in that there are equitable considerations in its favor which make *Monsanto* inapplicable, Celanese then brought an action in the District Court for the District of Columbia against the Commissioner of Patents seeking a determination that immediate issuance of a reissue patent was authorized. The District Court, considering itself bound by the *Monsanto* holding, granted a motion to dismiss the action. Celanese then appealed, but the Court of Appeals, reiterating the policy against simultaneous issuance of conflicting patents, held that *Monsanto* was controlling and affirmed the dismissal. Celanese Corp. v. Brenner, 133 U.S.App.D.C. 144, 409 F.2d 430, cert. denied 394 U.S. 999, 89 S.Ct. 1590, 22 L.Ed.2d 777 (1969).

Thus, despite the determination of the Patent Office in favor of the application of Celanese for reissuance of its patent, pending the ultimate disposition of the action in this court, duPont continues to have the exclusive right to exploit the process in question. Celanese contends that this circumstance is causing it to suffer sharp pecuniary losses for which it can not be compensated unless equitable relief is granted to it by this court. A reissue patent, Celanese argues, is issued only for the unexpired portion of the seventeen year term of the original patent. No rights with respect to claims not contained in

---

patent to the applicant who is adjudged the prior inventor. A final judgment adverse to a patentee from which no appeal or other review has been or can be taken or had shall constitute cancellation of the claims involved from the patent, and notice thereof shall be endorsed on copies of the patent thereafter distributed by the Patent Office.

5. *See* 35 U.S.C. § 135(a) (1964).

6. *Id.*

7. In *Monsanto* an applicant for a patent had prevailed in an interference proceeding over a patentee and the latter thereafter sought review in a district court pursuant to 35 U.S.C. § 146 (1964). Celanese distinguishes *Monsanto* on the ground that the former " * * * did not involve, as here, an instance of a winning applicant for a reissue patent against a losing patentee. * * * " According to Celanese the characteristics of a reissue patent, to be discussed fully in the text *infra*, give this distinction real significance.

the original patent are obtained by the patentee until the reissue patent is actually issued. *See* 35 U.S.C. §§ 251, 252 (1964). Delay in the issuance of the reissue patent means, therefore, a steady erosion of the term during which Celanese, assuming ultimate success on its part, will be permitted to enjoy patent rights over the invention in suit. Moreover, not only does Celanese suffer a present inability to assert patent rights over that invention, but it even may be barred forever from asserting those rights because intervening rights within the meaning of 35 U.S.C. § 252 (1964) may accrue.[8] Celanese claims other types of damages and losses it has suffered and will suffer by delay, including loss of possible royalties, and the competitive disadvantage in which Celanese finds itself at the moment due to duPont's control over the invention in suit.

Celanese seeks an order requiring duPont "to file a bond or undertaking indemnifying Celanese, in the event of final judgment in this action in favor of Celanese, for any damages or losses suffered by Celanese by reason of the delay —which has been caused by duPont's commencement and maintenance of this action—in the issuance of a reissue patent by the United States Patent Office to Celanese. * * * " It is undisputed that in the absence of such a bond or undertaking, absent proof of malicious prosecution or abuse of process, Celanese will be unable to recover any of the damage which assertedly it is suffering by virtue of the pendency of this action. *See* Meyers v. Block, 120 U.S. 206, 211, 7 S.Ct. 525, 30 L.Ed. 642 (1887); Russell v. Farley, 105 U.S. 433, 437, 26 L.Ed. 1060 (1881).

In urging this court to exercise its equitable powers in Celanese's favor, Celanese theorizes that the "commencement and maintenance of the § 146 action by duPont is the substantive equivalent of either an appeal by duPont or the securing of a temporary injunction." That is to say, the effect of this action has been to stay the hand of the Commissioner of Patents from issuing to Celanese a reissue patent despite Celanese's victory in the interference proceeding. Well-established principles, the argument continues, require that when a stay pending appeal is granted, or when a preliminary injunction is issued, a bond must be posted indemnifying the enjoined party for all consequential damages caused it by the stay or the injunction. It follows, according to Celanese, that the motion for a bond in this action is appropriate and should be granted.

While Celanese admits that the relief which it seeks is unique and unprecedented "in a patent context, " it endeavors to bring about the unprecedented by pinning its hopes on dictum found in the opinion of the Court of Appeals in Celanese Corp. v. Brenner, *supra.* In that case, it will be recalled, Celanese contended that the holding of Monsanto Co. v. Kamp, *supra,* should not be applied to Celanese because Monsanto had been concerned only with a dispute between an applicant for an original patent and a patentee. The peculiar problems of an applicant for a reissue patent were not in issue there. In affirming the dismissal of Celanese's complaint the Court alluded to the injuries asserted by Celanese but did not consider them. The Court said that " * * * the injuries experienced or feared by Celanese are best considered, in our opinion, by the District Court where the parties are involved in litigating the review of the interference ruling." The Court commented further that it presumed " * * * that the District Court in New York may, in the exercise of sound discretion and as an incident to the maintenance of the pending action by DuPont, fashion appropriate restitutionary relief

8. Intervening rights may arise in those instances when, between the grant of an original patent and the filing of an application for a reissue, a person makes, purchases or uses an invention or process which was not claimed by the original patent but which is included subsequently in the reissue. *See* 4, Walker on Patents § 320 (Deller 2d ed. 1965).

\* \* \*" for the benefit of Celanese. Such relief might be proper, the Court intimated, not only because of the private quarrel between duPont and Celanese, but also because of a public interest in not permitting a party to reap the benefits of a patent to which it is not entitled, as well as a public interest "\* \* \* in avoiding incentives for instituting or protracting litigation." 409 F.2d at 432–433. Celanese, while conceding that this dictum is not binding on this court, strongly urges it as being persuasive on the issue raised by its motion.

For added effect Celanese turns to a comment made by the Solicitor General in his successful opposition to Celanese's petition for a writ of certiorari in Celanese Corp. v. Brenner. There the Solicitor General, *inter alia,* referred to the dictum of the Court of Appeals and indicated a belief that Celanese may secure sufficient protection for its interests by seeking protective orders from this court.[9] This court appreciates the concern of the Solicitor General and of the Court of Appeals for the public interest, but duPont's continued exploitation of its patent does not conflict with that interest since duPont's patent still is viable.[10] Further, there is also a very definite public interest in maintaining forums freely available to parties in which they may litigate their differences. Indeed, the ready availability of courts to litigants is crucial to our adversary system.

An analysis of the question of the propriety of requiring a bond as a condition to the maintenance of a section 146 action leads this court to deny the relief sought.

At the outset it must be observed that Celanese's reliance upon the rules circumscribing preliminary injunctions and stays is wholly misplaced.[11] The mere commencement of this action by duPont did not constitute a "\* \* \* *judicial restraint* \* \* \* against Celanese obtaining the reissue patent" as Celanese argues. (emphasis added) There is no preliminary injunction in this case. The Commissioner of Patents is prevented from issuing a reissue patent to Celanese by a rule of law motivated by well-grounded reasons of policy and enunciated by the Court of Appeals for the District of Columbia Circuit. Also, there is no stay of execution of judgment pending an appeal involved here. While certain aspects of a section 146 action resemble those of an appellate proceeding, nevertheless this is an independent litigation,[12] and again any staying effect that arises out of the institution of this suit derives from the operation of a rule of law and not by virtue of any court order entered upon an application made by duPont. In short, if Celanese is entitled to the relief it seeks, it is not because of the particular rules which govern preliminary injunctions and stays.

Turning now to the specific issue of the propriety of requiring a bond here, this court has been asked to assert a broad power to redress an assertedly inequitable imbalance between the parties. In examining this request, it cannot be gainsaid that Celanese's posture is an awkward one. On the one hand the Board of Patent Interferences has determined that Celanese's claim is prior to that of duPont's and that Celanese is entitled therefore to patent rights over the

9. Respondent's Brief in Opposition to Certiorari at 9, Celanese Corp. v. Brenner, 394 U.S. 999, 89 S.Ct. 1590, 22 L.Ed.2d 777 (1969).

10. *See* discussion *infra.*

11. It is to be noted that Celanese speaks of injunctions and stays without attempting any distinction between them. There is, however, an important difference between the two. A bond is mandatory when a preliminary injunction is granted, but it is discretionary with the court when a stay is granted. *Compare* Rule 65(c) F.R.Civ.P. *with* Rule 8(b), F.R.App.P.

12. *See, e. g.,* Monsanto Co. v. Kamp, 269 F.Supp. 818, 822–823 (D.D.C.1967); Union Carbide Corp. v. Traver Investments, Inc., 238 F.Supp. 540, 542 (D.Ill. 1965).

invention in suit. On the other hand, unless and until there is an ultimate disposition of the instant action in Celanese's favor, Celanese is not entitled to reissuance of its patent. And because it is a reissue patent that Celanese has applied for, the term during which Celanese, if victorious, will be able to enjoy the sought after patent rights is being continually eroded. In sum, any victory won by Celanese may prove to be somewhat Pyrrhic. In this sense there is an imbalance between the parties. The crucial question, though, is whether, as Celanese suggests, this imbalance is such as to warrant intervention by the court.

Celanese does not contend that duPont was not within its rights in commencing this action, nor does Celanese contend that duPont is not within its rights in continuing to exploit the patent originally awarded to it. The statutory scheme is clear. "Any party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority, may have remedy by civil action, * * *" 35 U.S.C. § 146 (1964).[13] Further, only when there is "A final judgment adverse to a patentee from which no appeal or other review has been or can be taken or had * * *" can claims involved in an interference be cancelled from an unexpired patent. 35 U.S.C. § 135 (1964). It is this right of a patentee to continue to exploit its patent despite an adverse decision in the interference proceeding which expressly underlies the decisions in Monsanto Co. v. Kamp, 123 U.S.App. D.C. 365, 360 F.2d 499 (1965), and Celanese Corp. v. Brenner, 133 U.S.App.D. C. 144, 409 F.2d 430, cert. denied 394 U.S. 999, 89 S.Ct. 1590, 22 L.Ed.2d 777 (1969). For in the absence of this right the problem confronting the Court of Appeals in these cases—namely the possibility of the existence of two patents outstanding at the same time and relating to the same art—would not have arisen.

■■ The point to be made by all of this is that Celanese is not being deprived wrongfully of any right. Indeed, in law it is not being deprived of any right at all. The right to exploit the invention in suit now belongs to duPont. To be sure, there has been an administrative determination in favor of Celanese, but duPont's patent rights, until cancelled, remain exclusive, outstanding, and viable. An appeal to the equity powers of this court under the circumstances of this case must fail. Resort to equity correctly may be had when existing legal remedies are insufficient to correct asserted wrongs. However, the wrongs which equity may be called upon to right are legal wrongs. "Equity does not attempt, any more than the law, to deal with obligations and corresponding rights which are *purely* moral, which properly and exclusively belong to the tribunal of conscience." 2 Pomeroy Equity Jurisprudence, § 424 at 186 (5th ed. Symons, 1941). All that Celanese really complains of here is an awkward situation resulting from the predictable vagaries of litigation,[14] not the loss of any right. This is not

---

13. It is to be noted that nowhere in section 146 is it even implied that the maintenance of actions prescribed by it may be conditioned upon the posting of a bond, yet inclusion of such a provision would not have been a difficult task. The contrast in this regard between this and cases involving stays and preliminary injunctions is marked. Power for requiring the posting of a bond where a stay of judgment pending appeal is granted or where a preliminary injunction is granted is explicitly provided. Rule 8(b) F.R.App.P. and Rule 65(c) F.R.Civ.P.

14. Celanese acquired the Vaccaro patent and then, by applying for a reissue patent invited the subsequent interference proceeding all in order to bolster its competitive position in the industry. Celanese knew that even if it were to prevail ultimately, disposition of its claim would be a lengthy process. From the very start, therefore, the most sanguine prospect to which Celanese could look forward was eventual achievement of a reissue patent, the term of which would be substantially shorter than the lifespan of original patents.

enough, however, to cause this court to fashion restitutionary relief.

Motion denied.

So ordered.