STANDARD OIL COMPANY OF
INDIANA, Plaintiff,

v.

MONTEDISON S. p. A. et al.,
Defendants.

PHILLIPS PETROLEUM COMPANY,
Plaintiff,

v.

MONTEDISON S. p. A. et al.,
Defendants.

E. I. DU PONT DE NEMOURS AND
COMPANY, Plaintiff,

v.

MONTEDISON S. p. A. et al.,
Defendants.

Civ. A. No. 4319.

United States District Court,
D. Delaware.

Aug. 1, 1975.

See also, D.C., 342 F.Supp. 125.

———◆———

Robert H. Richards, III, of Richards, Layton & Finger, Wilmington, Del.,

John T. Kelton, Thomas V. Heyman, and Maxim H. Waldbaum, of Watson, Leavenworth, Kelton & Taggart, New York City, of counsel, for plaintiff Standard Oil Co. of Ind.

C. Waggaman Berl, Jr., Wilmington, Del., Sidney Neuman, Harry J. Roper and Robert L. Austin of Neuman, Williams, Anderson & Olson, Chicago, Ill., and Donald J. Quigg and Eugene E. Innis, Bartlesville, Okl., of counsel, for plaintiff Phillips Petroleum Co.

Roger A. Hines and Earl Handley, Wilmington, Del., Louis F. Reed of Fish & Neave, New York City, of counsel, for plaintiff E. I. Du Pont De Nemours and Co.

Edmund D. Lyons of Morris, James, Hitchens & Williams, Wilmington, Del., George B. Finnegan, Jr., Jerome G. Lee, Alfred P. Ewert, David H. Pfeffer and Stephen R. Smith of Morgan, Finnegan, Pine, Foley & Lee, New York City, of counsel, for defendant Montedison S.p. A., and others.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This is an action brought pursuant to 35 U.S.C. § 146 to review a decision of the Patent Office Board of Patent Interferences (the Board), that on November 29, 1971 awarded priority of invention to Montedison, S.p.A. From September 1972, until February of this year, a stay was ordered by this Court pending the resolution of an earlier-filed patent infringement action. That action involved the alleged infringement by numerous defendants[1] of Montedison's United States Letters Patent Number 3,112,300 (the '300 patent). The '300 patent, which is directed to a particular form of polypropylene, issued from application serial number 514,099 (the '099 application), filed on June 8, 1955. That same application also contains the count over which priority was awarded to Montedison in the decision here on appeal.[2] The infringement action was settled before trial, and all of the alleged infringers accepted licenses from Montedison.[3] Once the infringement suit was settled, litigation of this suit again became active.

Presently before the Court are motions by the three plaintiffs (the losing parties before the Board) seeking to amend their complaints.[4] The amendments proposed by E. I. Du Pont De Nemours & Co., (Du Pont), and Phillips Petroleum Co., (Phillips) would, in their most important aspects, add allegations that (1) the count in interference is not patentable to Natta, et al., (Montedison's assignors), for the invention was obvious as to Natta, et al. in view of unpublished disclosures made to Dr. Natta and his associates by Professor Karl Ziegler, and (2) material misrepresentations were made to the Patent Office during the course of the prosecution of the '099 application which should bar Montedison from further participating in these proceedings. Standard Oil Co. of Indiana (Standard), on the other hand, wishes to amend its complaint to add a declaratory judgment action contesting validity of United States Letters Patent Number 3,715,344 (the '344 pat-

---

1. The defendants in that action included, among others, Dart Industries, Inc., Exxon Corp., Chevron Chemical, Co., Avisun Corp., Eastman Kodak Co., Diamond-Shamrock Corp., Phillips Petroleum Co., and Amoco Chemicals Corp.

2. As a result of a subsequently-filed "divisional" application, it was possible for the '099 application to be the "parent" application for several patents. See 35 U.S.C. §§ 120–21 and Patent Office Rule of Practice 60, 37 C.F.R. § 1.60.

3. The settlement agreements in some aspects were made dependent upon the ultimate ruling on the issue of priority of invention.

4. For convenience, all losing parties to the interference are herein labeled plaintiffs and their pleadings are referred to as complaints. Actually four separate actions are involved here (although the actions have now been consolidated) and in each of these actions only one party is a plaintiff and all other parties are defendants.

ent), the patent containing the count in interference.[5]

■ As this Court views the Du Pont and Phillips motions, whether they are granted or denied is of little import. In this Circuit, the only issues properly triable in a § 146 action are those issues that were first presented to the Board. *Radio Corp. of America v. Philco Corp.*, 201 F.Supp. 135, 143 (E.D.Pa.1961), aff'd., per curiam, 309 F.2d 397 (3 Cir. 1962).[6] Certainly a party defendant is on notice that any issue properly presented to the Board can be presented here, and restatement of such issues in a § 146 complaint would appear to be unnecessary. Conversely, if an issue has not been presented to the Board, it cannot be tried in a § 146 action merely because it has been raised in the complaint. Since statements in a complaint delineating specific issues for consideration in a § 146 action are unnecessary, justice does not require allowance of amendments containing such statements despite Rule 15(a), Fed.R.Civ.P. Accordingly, the Du Pont and Phillips amendments will be denied.

■ In order to clarify for the parties the issues the Court considers proper for trial, some further words may, however, be in order. This Court has previously held that, if a party to an interference fails to attack the sufficiency of an opposing application on the grounds of non-operativeness by a Rule 232 motion, such party will be estopped from raising the issue in the subsequent § 146 proceeding. *Philco Corp. v. Radio Corp. of America*, 276 F.Supp. 24, 32–33 (D.C.Del.1967). It is the Court's opinion that, on the facts of this case, a similar rule should prevail with respect to fraud, i. e., if a party fails to make the appropriate motions to dissolve an interference by reason of fraud, or otherwise to bring fraud to the attention of the Patent Office, such party should be estopped from asserting fraud at a later date in a § 146 proceeding. Likewise, if a party to an interference fails to take appropriate steps to bring to the attention of the Board reasons that would make a count unpatentable as to one of the opposing parties, such failure will prevent such unpatentability from being an issue in the subsequent § 146 proceeding.[7]

In this case, neither Phillips nor Du Pont made appropriate motions to dissolve the interference by reason of Montedison's alleged fraud or otherwise sought to bring fraud to the attention of the Patent Office.[8] Similarly, apparent-

---

5. Although the Patent Office refrains from issuing a patent containing a count in interference when that count is the subject of a § 141 appeal to the Court of Customs and Patent Appeals, in contests between applicants when appeal is to a district court pursuant to § 146, the Patent Office cannot withhold issuance pending the outcome of the appeal. See, *Monaco v. Watson*, 106 U.S.App.D.C. 142, 270 F.2d 335 cert. denied, 361 U.S. 924, 80 S.Ct. 293, 4 L.Ed.2d 240 (1959). When an interference is declared between an applicant and a patentee, the Patent Office can withhold issuance of a patent to a prevailing applicant pending the outcome of the § 146 review. See *Monsanto v. Kamp*, 123 U.S.App.D.C. 365, 360 F.2d 499 (1965). In the instant case, wherein the interference was between applicants, the patent containing the count in interference issued as the '344 patent on February 6, 1973, more than a year after commencement of this suit.

6. The scope of § 146 proceedings has been similarly restricted by other courts. See, e. g., *Potter Instrument Co. v. Mohawk Data Sciences Corp.*, 309 F.Supp. 866 (S.D.N.Y. 1969). Recently, in this District, the rule restricting the scope of § 146 proceedings was applied by Judge Latchum. *Stamicarbon N. V. v. Chemical Construction Corp.*, 355 F.Supp. 228 (D.C.Del.1973).

7. There is no question, however, that fraud may be a proper issue in an interference suit when it has been raised before the Patent Office. See *Langer v. Kaufman*, 465 F.2d 915, 59 CCPA 1261 (1972); *Norton v. Curtiss*, 433 F.2d 779, 57 CCPA 1384 (1970); *Vandenberg v. Reynolds*, 242 F.2d 761, 44 CCPA 873 (1957).

8. Baxter, et al. (Du Pont's assignor) did make a motion before the Board of Patent Interferences to dissolve the interference as to Hogan, et al. (Phillips' assignor) asserting as grounds inequitable conduct by Phillips. That motion was denied.

ly no effort was made to persuade the Board that the count was unpatentable as to Natta, et al. under 35 U.S.C. § 103 on the grounds that Ziegler's communications with Natta were prior art. Further, neither Phillips nor Du Pont has convinced this Court that it now possesses significant new evidence on these issues which it lacked at the time of the Patent Office proceedings.[9] Accordingly, the trial in this case will be restricted to issues that were first presented to the Board of Patent Interferences.

The doctrine that a § 146 action should be a narrow and restricted proceeding has been the subject of criticism,[10] and in some cases a fuller proceeding may well be equitable. In this case, however, where no compelling excuses have been given for failing to present these additional issues to the Board, litigation for the first time of these issues would add undue complexity to a record already massive. The patent applications involved in this suit were in the mid-1950's. The interference was declared on September 9, 1958. Subsequently, the parties to the interference engaged in an incredibly involved program of discovery. That discovery generated extensive litigation. Reported decisions involving that discovery include *Montecatini Edison S.p.A. v. E. I.* *Du Pont de Nemours & Co.,* 434 F.2d 70 (3d Cir. 1970); *Natta v. Zletz,* 418 F.2d 633 (7th Cir. 1969); *In re Natta,* 410 F.2d 187 (3d Cir.), cert. denied, 396 U. S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969); *Natta v. Zletz,* 405 F.2d 99 (7th Cir. 1968), cert. denied, 395 U.S. 909, 89 S.Ct. 1753, 23 L.Ed.2d 223 (1969); *Natta v. Hogan,* 392 F.2d 686 (10th Cir. 1968) modifying *Hogan v. Zletz,* 43 F. R.D. 308 (N.D.Okl.1967); *In re Natta,* 388 F.2d 215 (3d Cir. 1968) affirming 264 F.Supp. 734 (D.Del.1967), and 259 F.Supp. 922 (D.Del.1966); *Natta v. Zletz,* 379 F.2d 615 (7th Cir. 1967); *In re Hogan,* 309 F.Supp. 945 (D.Del. 1970); and *In re Natta,* 48 F.R.D. 319 (D.Del.1969).

Thirteen years after the interference had been declared, on November 29, 1971, the Board of Patent Interferences issued its decision. Prior to issuing its decision, the Board took voluminous testimony and developed a record of prodigious dimensions. This Court is of the view that the time for resolution of this dispute has long since passed. Accordingly, this Court's duty to confine this proceeding to issues decided by the Board is dictated both by the normal rules regarding review of interference decisions and by a concern that litigation of those issues already decided by the Board be rapidly concluded.[11] If

---

9. Accompanying their briefs in support of the motions to amend, all of the parties submitted appendices containing supposedly pertinent letters, segments of depositions, transcripts of hearings, and other documents. This Court has carefully studied those bulky papers (the Du Pont appendix ran over 400 pages), but has found nothing that in its opinion would justify consideration of issues other than those issues first presented to the Board of Patent Interferences.

10. See, e. g., Pat.L.Persp. § C.6[1] (1969–70 A/R).

11. Regarding the fraud issue, this Court is aware of only one other case in which a party attempted to interject charges of fraud into a § 146 proceeding after the conclusion of Patent Office proceedings. *Iron Ore Co. of Canada v. Dow Chemical Co.,* 177 U.S.P.Q. 34 (D.Utah 1972), aff'd., 500 F.2d 189 (10th Cir. 1974). In that case, the trial court found that the fraud allegations could not be supported by the record but added that the allegations were "in any event, immaterial and irrelevant to the issues before the court. They comprise totally new issues which plaintiff is not entitled to press in these proceedings." 177 U.S.P. Q. 47. The Appeals Court simply found that the finding of no fraud was supportable from the record and made no mention of the fact that fraud was a new issue. 500 F.2d 195.

One authority criticized the District Court's opinion, contending that although the general rule in § 146 cases might preclude the introduction of new issues, fraud should be treated differently in view of the importance of ferreting out fraudulent procurement activities. Pat.L.Persp. § C.5–19 (1973 Dev.). While that criticism has mer-

issues outside the Board record are to be litigated, they must be raised in the context of validity defenses to infringement suits or as affirmative antitrust actions. The public interest may be amply protected by this procedure.

The posture of Standard's motion to add a declaratory judgment action contesting the validity of the '344 patent is somewhat different. Although there appears to be little authority on point in this Circuit, one recent case, *Montecatini Edison, S.p.A. v. Ziegler*, 159 U.S.App. D.C. 19, 486 F.2d 1279 (1973) (*Ziegler*), dealt with a somewhat analogous situation. In that case, a defendant in a § 146 action sought to assert a counterclaim alleging the misappropriation of inventions by the plaintiff. The court held that counterclaims were proper in § 146 actions, just as they are in any other civil action. Accordingly, Standard argues that under *Ziegler*, it is proper to join a claim seeking a declaration of invalidity with a § 146 action.

This Court is not convinced that the *Ziegler* rationale extends to this case. The *Ziegler* court cited with approval *Radio Corp. of America v. Philco Corp.*, *supra*, but distinguished the misappropriation counterclaim at issue from the earlier case because, "It [the counterclaim] was not presented before the Board of Patent Interferences because it *could not* be presented there. Under these circumstances, failure to assert the claim is not a waiver and Ziegler is not estopped from interposing his counterclaim in this action." *Ziegler* at 1283 (emphasis original). Since the allegations in Standard's proposed declaratory judgment action could have been presented to the Patent Office,[12] *Ziegler*

apparently would bar their assertion here.

■ Assuming however, that an action seeking a declaratory judgment of invalidity properly can be joined with a § 146 action, Standard is not in a position to bring such an action here.

■ This Court has previously stated that a charge of infringement or a reasonable apprehension of a charge of infringement is a prerequisite to the bringing of a declaratory judgment action for invalidity. *Thiokol Chemical Corp. v. Burlington Industries, Inc.*, 313 F.Supp. 253 (D.C.Del.1970), aff'd., other grounds, 448 F.2d 1328 (3d Cir. 1971) (*Thiokol*); *Eastman Kodak Co. v. Studiengesellschaft Kohle mbH*, 392 F.Supp. 1152 (D.C.Del.1975). In *Thiokol*, this Court explicitly held that declaratory judgment actions seeking invalidity decrees are not proper when the plaintiff is a licensee who is making royalty payments. While there is some recent authority to the contrary,[13] this Court adheres to its earlier view, as expressed in *Thiokol*.

In this case, Standard has not been charged with infringement of the '344 patent and indeed it is unlikely that it ever could be, for Standard reportedly does not practice the invention of the '344 patent. Standard does own 100% of this stock in Amoco Chemicals Corp. (Amoco), a corporation that apparently does practice the invention, but Amoco is a licensee under the '344 patent and is making regular royalty payments.

Further, even if Amoco were being threatened with an infringement action, it is doubtful that Standard should be allowed to bring a declaratory judgment

---

it, in this case the interest in concluding overly protracted litigation outweighs any interest that might be served by allowing Phillips and Du Pont to air charges of fraud in the context of this lawsuit.

12. At the time this interference was pending, Patent Office Rule of Practice 232 provided for motions to dissolve the interference on the ground that the count involved was unpatentable. Rule 232 is no longer in effect

but unpatentability can still be used as grounds for dissolution. See Patent Office Rule of Practice 231, 37 C.F.R. § 1.231. The Patent Office thus had available appropriate methods by which Standard could have raised what it now asserts to be grounds for holding the '344 patent invalid.

13. See, e. g., *Medtronic v. American Optical Corp.*, 327 F.Supp. 1327 (D.Minn.1971).

action on Amoco's behalf. The weight of authority is against allowing a shareholder (in this case Standard) to disregard the corporate entity and to bring an action on the corporation's behalf. See, e. g., *Green v. Victor Talking Machine Co.*, 24 F.2d 378, 380 (2nd Cir.) cert. denied, 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530 (1928); *E. M. Fleischmann Lumber Corp. v. Resources Corp. International*, 105 F.Supp. 681, 690 (D.Del. 1952), aff'd., on other grounds, 211 F.2d 204 (3d Cir. 1954). (". . . the reasons for permitting the parent corporation to disregard for purposes of suit the separate entity of the wholly-owned subsidiary corporation are not apparent"). Since Standard's proposed amendment would present a legally insufficient claim, leave to amend will be denied. See 3 J. Moore, Federal Practice ¶ 15.08[4], at 902–05 (2d ed. 1974).