NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1278

MCKECHNIE VEHICLE COMPONENTS USA, INC.,

Plaintiff-Appellant,

v.

LACKS INDUSTRIES, INC.,

Defendant-Appellee.

_____

DECIDED:  January 21, 2005

_____

Before SCHALL, DYK, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

McKechnie Vehicle Components USA, Inc. ("McKechnie") appeals the United States District Court for the Eastern District of Michigan's grant of summary judgment in favor of Lacks Industries, Inc. ("Lacks").  McKechnie asserts that the court erred in upholding a finding from an interference proceeding before the Board of Patent Appeals and Interferences ("Board") of the United States Patent and Trademark Office ("PTO") that awarded Lacks's patent application, Patent Application No. 08/479,658 ("the '658 application"), priority over McKechnie's patent, U.S. Patent No. 5,368,370 ("the '370 patent").  Further, uninformed of continued litigation, the PTO issued a patent on Lacks's application after the district court decision but while this appeal was pending.  We hold that (1) McKechnie's '370 patent has priority over Lacks's '658 patent

application; and (2) Lacks's subsequently issued patent is a nullity because the PTO did not have jurisdiction to issue Lacks's application as a patent while this appeal was pending. We reverse and remand the case to the district court.

## I. BACKGROUND

McKechnie owns the '370 patent, filed on September 3, 1993 and granted on November 29, 1994, which claims a decorative covering that snaps over an automobile wheel rim to make a standard wheel look like a chrome wheel. McKechnie v. Lacks, No. 02-73871 (E.D. Mich. October 28, 2003). Lacks owns U.S. Patent No. 5,636,906 ("the '906 patent"), invented by Lee A. Chase ("Chase"), that was accorded the benefit of the filing date of an earlier application, June 25, 1992, and claims a similar decorative wheel covering. Id. On June 7, 1995, Lacks filed the '658 application with claim language essentially copied from the '370 patent for the purpose of provoking an interference. Id. The '658 application was filed as a division of the application that ultimately became the '906 patent ("the parent application").[1] Id.

On March 4, 1997, the Board declared an interference between the '658 application and the '370 patent. Id. The purpose of the interference was to determine priority between the '370 patent and the '658 application for the invention of an overlay that covers the rim of the wheel. Id. The '658 application would have an earlier priority date than the '370 patent if Lacks could show that the written description in the parent application supported the claims for an overlay covering the rim of the wheel. Id. The

---

[1] The application that ultimately became the '906 patent, the parent application, was issued after Lacks filed the '658 patent application. Citations to the '906 patent therefore accurately show the specification of the parent application.

sole count of the interference corresponded to claims 1-17 of the '370 patent and claims

24 and 44-48 of the '658 application:

> Count 1
> A composite vehicle wheel assembly comprising:
> an annular rim defining a central axis and having a pair of spaced rim flanges;
> a spider concentrically fixed within said rim for connecting to a rotating hub, said spider including a plurality of spokes;
> an ornamental appliqué of a uniform material thickness <u>overlapping said rim</u> and said spider;
> said appliqué having an annular outer connecting portion disposed adjacent one of said rim flanges, an annular inner connecting portion and plurality of vent openings aligned between said spokes of said spider and positioned between said inner and outer connecting portions;
> a curable adhesive of substantially uniform thickness disposed between said appliqué and said rim and said spider along overlapping surface areas; and
> locking means coacting between said appliqué and said rim and said spider while said adhesive cures and for continued retention thereafter to hold said appliqué in place.

Interference No. 103,836 (PTO August 19, 2002) (emphasis added).

On August 19, 2002, the Board found that the parent application supported the

claims in the '658 application by describing an overlay that extended over the wheel rim.

Accordingly, it held that the claims of the '658 application merited the priority date of the

parent application, namely June 25, 1992, and thus that McKechnie was not entitled to

the '370 patent. Id.

The Board based its finding on one figure and three statements in the parent

application. First, it relied on Figure 3[2] of the parent application, where the Board drew a "line of demarcation" separating the "disk" from the "rim" so that the overlay could be found to cover both the disk and rim. Id. Noting that Figure 3, even with the "line of demarcation" separating the rim from the disk, shows the bottom portion of the rim uncovered, the Board found that three statements in the specification of the parent application nonetheless supported the claims-at-issue. Id. (relying upon column 6, lines 55-58 of the '906 patent for disclosing a rim; column 10, lines 11-13 for teaching an overlay that "substantially" covers the wheel; and column 10, lines 22-25 for teaching an overlay that covers the "entire" outboard surface of the wheel).

On September 26, 2002, McKechnie filed suit in the district court under 35 U.S.C. § 146, seeking to overturn the Board's interference decision. On October 28, 2003, the district court entered summary judgment against McKechnie, affirming the Board's decision that the specification of the parent application supported the '658 application. McKechnie v. Lacks, No. 02-73871 (E.D. Mich. October 28, 2003). Thereafter, on June 29, 2004, after this case had been appealed to this court, but before oral argument, the PTO issued Lacks's '658 application as U.S. Patent No. 6,755,485 ("the '485 patent"), unaware of the ongoing litigation. McKechnie appeals the district court's decision on

---

[2] Figure 3 of the '906 patent:



multiple grounds, the threshold issue being whether the court erred in agreeing with the Board that the parent application supported the claims in the '658 application. Additionally, the PTO filed an amicus brief in this appeal raising issues related to the PTO's issuance of the '485 patent while this appeal was still pending.

We have jurisdiction to hear this appeal under 28 U.S.C. § 1295(a)(4)(C).

## II.  DISCUSSION

### A.  Standard of Review

We review a grant of summary judgment by the district court de novo. Conservolite, Inc. v. Widmayer, 21 F.3d 1098 (Fed. Cir. 1994).

### B.  Lacks's Claim of Priority from the Parent Application

The "written description requirement" as separate from the "enablement requirement" of 35 U.S.C. § 112 ¶ 1 originally arose in our predecessor court's case law to deal with claims of priority for continuing applications that claimed new matter vis-à-vis the parent.  In re Ruschig, 54 CCPA 1551, 1558 (1967) ("If based on section 112, it is on the requirement thereof that 'The specification shall contain a written description of the invention.'"); see also Chiron Corp. v. Genentech, Inc., 363 F.3d 1247, 1255 (Fed. Cir. 2004) ("In 1967, this court's predecessor began to enforce priority as a component of the 35 U.S.C. § 112, first paragraph, written description requirement.").  Although continuing applications can receive the benefit of the earlier-filed application, the parent application must fully support the claims to satisfy the written description requirement. Chiron, 363 F.3d at 1255.  If not supported in the parent application, the claims are only entitled to the filing date of the new application.  Id.  In this case, the benefit of the priority date of June 25, 1992 applies only to claims in the '658 application that satisfy

the "written description requirement" in 35 U.S.C. § 112 ¶ 1 through the specification in the parent application.

On appeal, McKechnie argues that the parent application failed to support the claims of the '658 application. McKechnie's argument relies upon the specification of the parent application, which it contends does not teach an overlay as far as the wheel rim as claimed by the '658 application. Lacks responds that Figure 3 and the written description of the parent application support the "line of demarcation" drawn by the Board and relied upon by the district court.

We reverse the district court's decision on two grounds. First, nowhere in the specification does the parent application depict or describe a "line of demarcation." Indeed, the description of Figure 3 reveals the contrary: "As seen in FIG. 3, the overlay 20 is preferably formed with radially outward and inward axially-extending flanges 32 and 34, respectively, which are received in recesses 42 and 44, respectively, in the surface of the wheel disk 18." '906 patent at col. 7, ll. 20-23 (emphasis added).

Second, the statements in the specification that the Board relied upon, and the district court agreed with, to counter this description and support the "line of demarcation" as drawn are unpersuasive. The first statement discloses, "The wheel 11 of the composite wheel 10 includes a wheel disk 18 which defines an outboard surface of the composite wheel 10, a peripheral rim portion or rim 12 with a peripheral lip 12a." '906 patent at col. 6, ll. 55-58. We note that this statement only discloses the description of the wheel and does not support a finding that the parent application teaches an overlay covering the rim portion. This statement shows that Lacks

understood that the rim portion was at the outer edge of the wheel, where the overlay does not extend in any of the figures, including Figure 3.

The second statement discloses, "Another significant advantage of the present invention is that the overlay 20 can cover substantially the entire exposed surface of a cast aluminum wheel." Id. at col. 10, ll. 11-13. The term "substantially" falls short of establishing that the overlay covers the entire wheel, including specifically the rim portion.

The third statement discloses, "While allowing the entire outboard surface of the wheel 11 to have a chrome-plated finish, the overlay 20 of the present invention adds typically less than one pound of weight to the composite wheel 10." Id. at col. 10, ll. 22-25. This statement does not support an overlay that extends to the rim, either. Rather, it pertains to the "outboard surface of the wheel," which also only supports covering the disk portion of the wheel.

In sum, we hold that these statements are insufficient to support the Board's finding. We therefore reverse and find that the parent application, the application that ultimately became the '906 patent, does not satisfy the written description requirement for the claims at issue in the '658 application. Because we hold that the specification of the parent application did not support the claims at issue in the '658 application, we do not need to reach the merits of the other issues raised by McKechnie, including whether the court erred in "ignoring" new evidence submitted by McKechnie, in not reviewing the Board's decision de novo, in rejecting testimony by McKechnie's expert, and in affirming the Board's denial of McKechnie's motion to correct its preliminary statement. We find that the McKechnie '370 patent has priority over the '658 application.

C. Remedy

Ordinarily, our analysis would end here. However, in this case, unique circumstances allowed the '485 patent to issue during this appeal. Unaware of the ongoing litigation, the PTO mistakenly issued the '658 application as the '485 patent.[3] The PTO filed an amicus brief in this appeal addressing whether the issuance of the '485 patent had any legal effect. In its brief, the PTO takes the position that it did not have jurisdiction to issue the '658 application as a patent and such patent is therefore a nullity.

The question of whether the PTO had jurisdiction appears to be an issue of first impression in this court. We find the holding in a similar case in the United States Court of Appeals for the District of Columbia Circuit persuasive. In Monsanto Co. v. Kamp, the District of Columbia Circuit found, "[T]he Commissioner should not issue a second patent where an existing patent is outstanding and the cancellation of its terms cannot be effectuated until termination of an action pending in court." 360 F.2d 499, 501 (D.C. Cir. 1965). In reaching this conclusion, the District of Columbia Circuit noted: (1) 35 U.S.C. § 135 differentiates between an application-application and a patent-application interference; (2) 35 U.S.C. § 135 only allows for cancellation of existing patent claims when there has been a final judgment from which no appeal can be taken; (3) 35 U.S.C.

---

[3] Ordinarily, the PTO would not issue the patent until the litigation concluded. Under 37 C.F.R. § 1.660, parties in any interference proceeding must notify the Board of any litigation related to any interference "including any civil action commenced under 35 U.S.C. § 146." 37 C.F.R. § 1.660 (d). The purpose of this rule is to put the Board on notice of ongoing litigation so that it does not inadvertently issue a patent or take other action when it does not have jurisdiction. Here, the parties did not notify the Board of the ongoing litigation and consequently, the PTO issued the '485 patent.

§ 135 has no provision as to what happens to the outstanding patent that lost in the interference; and (4) if 35 U.S.C. § 135 is read to allow another patent to issue, there would be two outstanding patents "at the same time on the same subject matter," which contradicts "the whole thesis of patent issuance" that is "couched in terms of exclusivity." Id. The District of Columbia Circuit found, "Of course a duplication of a patent grant may upon occasion occur by accident, but it cannot be a valid feature of governmental program." Id. We find this reasoning sound and apply it in this case.

Under 28 U.S.C. § 1295(a)(4)(C), this court has exclusive jurisdiction to hear the appeal from the district court in an action under 35 U.S.C. § 146. Neither 35 U.S.C. § 146 nor 28 U.S.C. § 1295 has any provision for canceling the outstanding patent that did not prevail in the interference proceeding; without such a provision, the '370 patent in this case is still valid. Consequently, if 35 U.S.C. § 146 is read to allow another patent to issue, which in this case would be the '485 patent, there would be two outstanding patents "at the same time on the same subject matter." Construing 35 U.S.C. § 146 in this manner would contradict "the whole thesis of patent issuance" rooted in the United States Constitution and "couched in terms of exclusivity." For the reasons stated above, we conclude that the PTO did not have jurisdiction to issue the patent until this court resolved the merits of the action, and therefore the issuance of '485 patent had no legal effect and the '485 patent is a nullity.

### III. CONCLUSION

We reverse the district court's decision and remand the case to the district court with instructions to enter summary judgment in favor of McKechnie and an appropriate order declaring the '485 patent to be invalid.