STANDARD OIL COMPANY, a corporation of Indiana, Appellant in No. 75–2436,

v.

MONTEDISON, S.p.A., a corporation of Italy, et al.

Appeal of E. I. duPONT de NEMOURS & COMPANY, in No. 75–2437.

Appeal of PHILLIPS PETROLEUM COMPANY, in No. 75–2438.

Nos. 75–2436 to 75–2438.

United States Court of Appeals, Third Circuit.

Argued May 24, 1976.

Decided July 21, 1976.

---

Thomas F. Reddy, Jr., Pennie & Edmonds, New York City, for appellant in No. 75-2436.

Roger A. Hines, E. I. du Pont de Nemours and Co. Legal Department, Wilmington, Del., for appellant in No. 75-2437.

Harry J. Roper, Neuman, Williams, Anderson & Olson, Chicago, Ill., for appellant in No. 75-2438.

George B. Finnegan, Jr., Morgan, Finnegan, Pine, Foley & Lee, New York City, for appellee.

Before MARIS, ADAMS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

These are appeals taken pursuant to 28 U.S.C. § 1292(b) from an interlocutory order of the United States District Court for the District of Delaware denying motions by the plaintiffs, Standard Oil Company (herein Standard Oil), E. I. duPont de Nemours & Company (herein duPont) and Phillips Petroleum Company (herein Phillips), for leave to amend their complaints in civil actions filed in the district court to review, pursuant to 35 U.S.C. § 146, an award of priority of invention made by the Board of Patent Interferences of the Patent Office, now known as the Patent and Trademark Office,[1] to the defendant, Montedison, S.p.A. (herein Montedison).

The history of the controversy involved in the cases may be briefly summarized. Pursuant to 35 U.S.C. § 135, Interference No. 89,635 was instituted and declared in the Patent Office on September 9, 1958 to permit the Board of Patent Interferences of that Office to determine the question of priority of invention as to the following five patent applications all claiming a new composition of matter, crystalline polypropylene:[2]

Application of John Paul Hogan and Robert L. Banks, assigned to Phillips, filed January 11, 1956, Ser. No. 558,530.

Application of Edwin J. Vandenberg, assigned to Hercules, Inc., filed July 21, 1955, Ser. No. 523,621; accorded benefit of Ser. No. 500,041 filed April 7, 1955.

---

1. Congress has amended title 35 of the United States Code to change the name of the Patent Office to the "Patent and Trademark Office." Act of January 2, 1975, Pub.L. 93-596, 88 Stat. 1949.

2. The subject matter claimed in the five applications copending in the Patent Office is described in the sole count of Patent Interference No. 89,635 as follows: "Normally solid polypropylene, consisting essentially of recurring propylene units, having a substantial crystalline polypropylene content."

Application of Warren Nesmith Baxter, Nicholas George Merckling, Ivan Maxwell Robinson and Gelu Stoeff Stamatoff, assigned to duPont, filed December 30, 1955, Ser. No. 556,548; accorded benefit of Ser. No. 451,064, filed August 19, 1954.

Application of Giulio Natta, Piero Pino and Georgio Mazzanti, assigned to Montedison, filed June 8, 1955, Ser. No. 514,099; accorded benefit of Italian application No. 24,227 filed June 8, 1954.

The interference proceeding lasted for over 13 years during which the parties' extensive discovery efforts generated numerous ancillary proceedings in the federal courts.[3] The Board of Patent Interferences, after compiling a considerable record, including a large number of exhibits and the testimony of 126 witnesses, finally brought the lengthy and complex proceeding to a close on November 29, 1971. The Board awarded priority of invention to Natta and his coinventors, Pino and Mazzanti, the senior parties to the interference, to whom the Commissioner of Patents on February 6, 1973 issued Patent No. 3,715,344. Claim 1 of that patent is similar to the count of the terminated interference. Montedison is the present owner of the application filed by Natta *et al.* and of the patent subsequently issued on their application.

Standard Oil, duPont and Phillips, three of the assignees and present owners of applications of losing parties to the interfer-

ence, instituted civil actions, pursuant to 35 U.S.C. § 146, in the District Court for the District of Delaware to challenge the Board's decision.[4] The three plaintiffs, each of whom brought suit individually in January, 1972, named as defendants the assignees of the other parties to the interference proceeding in the Patent Office. These three cases and a fourth § 146 suit filed in the District Court for the District of Columbia by Standard Oil and subsequently transferred to the District Court for the District of Delaware which also named the assignees of the other parties to the interference as defendants were assigned in the district court[5] to Judge Wright who, in September, 1972, stayed the actions until the resolution of earlier-filed, related patent infringement actions which were then pending before him in the district court.

These infringement actions, which had been instituted by Montedison in the years between 1965 and 1969 against a number of alleged infringers and consolidated by the court under Civil Action No. 3343, involved Montedison's Patent No. 3,112,300 issued November 26, 1963 on a divisional application, Serial No. 701,332, the original parent application being the one involved in Interference No. 89,634. Patent No. 3,112,300 covers a species of crystalline polypropylene, crystalline polypropylene being the subject matter of Interference No. 89,634 and of the claims in Patent No. 3,715,344, the patent awarded to Montedison at the conclusion of the interference proceeding.

---

3. *Montecatini Edison S.p.A. v. E. I. duPont de Nemours & Co.*, 434 F.2d 70 (3d Cir. 1970); *Natta v. Zletz*, 418 F.2d 633 (7th Cir. 1969); *In re Natta*, 410 F.2d 187 (3d Cir.), *cert. denied*, 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969); *Natta v. Zletz*, 405 F.2d 99 (7th Cir. 1968), *cert. denied*, 395 U.S. 909, 89 S.Ct. 1753, 23 L.Ed.2d 223 (1969); *Natta v. Hogan*, 392 F.2d 686 (10th Cir. 1968); *In re Natta*, 388 F.2d 215 (3d Cir. 1968); *Natta v. Zletz*, 379 F.2d 615 (7th Cir. 1967); *In re Hogan*, 309 F.Supp. 945 (D.Del. 1970); *In re Natta*, 48 F.R.D. 319 (D.Del.1969).

4. The Board rendered judgment on the issue of priority on October 6, 1964 against Vandenberg. Vandenberg and his assignee, Hercules, Inc., then filed a § 146 civil action in the United States District Court for the District of Columbia. The case was held in abeyance by that

court until the Board had made its final determination of priority, after which it was dismissed with prejudice, October 19, 1972. Hercules, Inc. was named a defendant in the § 146 actions presently under consideration; however, judgment by default was entered in these actions against Hercules, Inc. September 1, 1972.

5. The suit brought by Standard Oil in the Delaware District Court was docketed at Civil Action No. 4319, the suit by Phillips at No. 4321 and the one by duPont at No. 4323. Standard Oil's suit originally filed in the District Court for the District of Columbia was docketed upon transfer to the Delaware District Court at its Civil Action No. 4647. The four cases were consolidated on May 15, 1975 under Civil Action No. 4319.

Phillips and a subsidiary of Standard Oil, Amoco Chemicals Corporation, were among the defendants in the consolidated infringement action.

The infringement action was settled shortly before the trial of that action was scheduled to start in February, 1975. Active prosecution of the § 146 suits was then resumed. Standard Oil, duPont and Phillips immediately filed motions for leave to amend and supplement their complaints brought under § 146 to add new charges against Montedison on the basis, as they alleged, of new information received by them since the complaints were filed in the district court.[6] Standard Oil, in addition, sought on the basis of the new charges to introduce a new cause of action under the Declaratory Judgments Act, 28 U.S.C. § 2201, and to include in the relief it sought a prayer that the court adjudge and decree Montedison's Patent No. 3,715,344 invalid and unenforceable. The district court by order of September 25, 1975 denied the motions. The appeals before us are taken from that interlocutory order. On May 15, 1975, prior to the entry of that order, the four pending § 146 actions had been consolidated by the district court under its Civil Action No. 4619.

The proposed amendments would have added charges against Montedison involving issues of unpatentability of invention, misjoinder of inventors and fraud. As to its alleged fraudulent conduct, Montedison was claimed to have deliberately misrepresented and failed to disclose material facts in the process of filing and prosecuting its patent applications Serial Nos. 514,099 and 701,332 in the Patent Office and in the proceedings before the Board of Patent Interferences.

In its opinion filed August 1, 1975, 398 F.Supp. 420, the district court stated its reasons for denying the plaintiffs' motions to amend their complaints as well as Standard Oil's motion to add a count under the Declaratory Judgments Act. In its definitive order of denial the district court stated

that it was of the opinion "that this Order denying the motions to amend the pleadings to allege fraud by the party Montedison in connection with the application resulting in U.S. Patent 3,715,344 and the related interference proceeding 89634, involves controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Thereafter this court granted the petitions of Standard Oil, duPont and Phillips for permission under 28 U.S.C. § 1292(b) to appeal from the order of the district court and, in so doing, we ordered that the briefs of the parties be directed solely to the following question:

"When petitioners bring an action before a district court pursuant to 35 U.S.C. § 146, may the district court determine whether the respondent acted fraudulently in the proceeding before the Board of Patent Interferences, even though that issue was not raised before that Board?"

Standard Oil and duPont requested this court to amend its order by supplementing or restating the question for review in order to make it conform more closely with the scope of the question stated in the order of the district court. The appellants pointed out that the legal question as phrased by this court, literally read, limited the question on appeal to the power of the district court to consider the newly raised issue of fraudulent conduct "in the proceeding before the Board of Patent Interferences" alone. Appellants contended that, on the other hand, the controlling question of law on which the district court ruled and which it certified as justifying an interlocutory appeal encompasses its power to consider newly raised allegations of fraud arising from the activities of Montedison "in connection with the application resulting in U.S. Patent 3,715,344" as well as "the related interference proceeding 89634." This court, on December 17, 1975, denied the motion of Standard Oil and duPont. Ac-

6. Phillips also sought leave to amend and add similar allegations to its counterclaim in Civil Action No. 4647, the action instituted by Standard Oil in the District Court for the District of Columbia and thence transferred to the District Court for the District of Delaware.

cordingly, we address ourselves to the question involved in these appeals as we have phrased it, indicating our reasons for limiting the question as we did.

A civil action brought under 35 U.S.C. § 146 is essentially a proceeding to review the action of the Board of Patent Interferences in an interference proceeding in denying priority of invention to the plaintiff.[7] If the district court decides the question of priority against the plaintiff, the latter has obtained the full remedy which the statute gives him. *Sanford v. Kepner,* 344 U.S. 13, 15, 73 S.Ct. 75, 97 L.Ed. 12 (1952). While in form a trial *de novo,* the review proceeding is ordinarily subject to the general rule of estoppel applicable to proceedings for the review of administrative agency actions that consideration of issues ancillary to priority is limited to those issues which have been raised before the Board in the interference proceeding.[8] Fraud in prosecuting a party's case in an interference proceeding may obviously affect the Board's determination of priority and may, therefore, be raised before the Board.[9] If so raised, it may, of course, also be raised in the § 146 suit in the district court. But what of an issue of fraud in the interference proceeding which has not been raised before the Board but is sought to be raised for the first time in the § 146 action? May such an issue of fraud be thus for the first time litigated in that action? This, of course, is the question which the present appeals present and it would appear to be a question of first impression.[10]

In considering this question we bear in mind that one who prosecutes an application for a patent must meet the highest standards of conduct in dealing with the Patent Office. An applicant who seeks to obtain a patent for his invention is asking the government for the grant of a monopoly which concerns not only other private parties who may also be claiming the same invention, but which involves issues of great moment to the general public as well. The circumstances surrounding such a proceeding must be wholly free from fraud and other inequitable conduct.[11] An action brought under § 146, while limited to the review of a decision of the Board of Patent Interferences, is equitable in its na-

7. *Radio Corporation of America v. Philco Corporation,* 201 F.Supp. 135, 143 (E.D.Pa.1961), *aff'd per curiam,* 309 F.2d 397 (3d Cir. 1962); *see Morgan v. Daniels,* 153 U.S. 120, 124, 14 S.Ct. 772, 38 L.Ed. 657 (1894).

8. *Radio Corporation of America v. Philco Corporation,* 201 F.Supp. 135, 143 (E.D.Pa.1961), *aff'd per curiam,* 309 F.2d 397 (3d Cir. 1962); *accord, Montecatini Edison, S.p.A. v. Ziegler,* 159 U.S.App.D.C. 19, 486 F.2d 1279, 1283 (1973); *General Motors Corp. v. R. E. Dietz Co.,* 137 U.S.App.D.C. 100, 420 F.2d 1303, 1305–1306 (1969); *Stamicarbon, N.V. v. Chemical Construction Corp.,* 355 F.Supp. 228, 233 (D.Del.1973); *Potter Instrument Co. v. Mohawk Data Sciences Corp.,* 309 F.Supp. 866, 867 (S.D.N.Y.1969). *See also Kirschke v. Lamar,* 426 F.2d 870, 873–874 (8th Cir. 1970); *California Research Corp. v. Ladd,* 123 U.S.App.D.C. 60, 356 F.2d 813, 820–821 (1966); *Barrett Co. v. Koppers Co.,* 22 F.2d 395 (3d Cir. 1927); *Eastman Kodak Co. v. E. I. duPont de Nemours & Co.,* 284 F.Supp. 389, 395 (E.D. Tenn.1968); *Monsanto Co. v. Kamp,* 269 F.Supp. 818, 822 (D.C.1967).

9. In *Norton v. Curtiss,* 433 F.2d 779, 783, 57 C.C.P.A. 1384 (1970), and *Langer v. Kaufman,* 465 F.2d 915, 920–921, 59 C.C.P.A. 1261 (1972), the Court of Customs and Patent Appeals held that fraud may be considered by the Board.

10. *Iron Ore Co. of Canada v. Dow Chemical Co.,* 177 U.S.P.Q. 34 (D.Utah 1972), *aff'd,* 500 F.2d 189 (10th Cir. 1974), was cited by the district court, 398 F.Supp. at p. 423, n.11, as authority on the question but we do not so regard it. The district court in that case indicated that the newly raised issue of fraud should not be considered but the court nonetheless did consider it and decided that it was without merit. The court of appeals approved the district court's finding without discussing the legal question. The other cases cited by the district court, 398 F.Supp. at p. 422, did not involve a newly raised issue of fraud.

11. *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 816, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Monsanto Co. v. Rohm & Haas Co.,* 456 F.2d 592, 597–598 (3d Cir.), *cert. denied,* 407 U.S. 934, 92 S.Ct. 2463, 32 L.Ed.2d 817 (1972); *In re Multidistrict Litigation Involving Frost Patent,* 540 F.2d 601, Nos. 75–1936 to 75–1945 (3d Cir. July 14, 1976).

ture. Indeed, § 4915 R.S., as amended, from which 35 U.S.C. § 146 was derived, specifically provided for review of Board decisions by bill in equity. The substitution in § 146 of a civil action under the present procedure for the former bill in equity clearly made no change in this regard since a civil action may include causes in equity as well as at law. It necessarily follows, we think, that in appropriate circumstances the district court may, in such an action, in the exercise of a sound discretion, permit an issue of fraud which infected the Board's determination to be raised though it was not raised in the interference proceeding. In determining whether to make in this regard a discretionary exception to the general rule against raising new issues, the district court will consider, *inter alia,* whether there was suppression, bad faith or gross negligence on the part of the plaintiff in failing to raise the issue of fraud before the Board of Patent Interferences or whether, on the other hand, the evidence of such fraud was not then reasonably available to him.[12] Whether the issue has been or may be more conveniently and expeditiously raised in another judicial proceeding has relevance. If after considering all relevant factors the court concludes that manifest injustice to the parties and the public will otherwise result, it should permit the issue to be raised for the first time in the § 146 proceeding.

We do not regard the discretionary power of the district court to permit an issue of fraud to be raised for the first time in a § 146 action as extending to issues of fraud which are not involved in the interference proceeding itself. For it is only fraud which may have affected the determination by the Board of the factual issue of priority of invention, i. e., the question as to which of the parties involved in the interference actually first used the device or process of the invention,[13] which could have any effect on the determination by the Board of that historical fact. While other fraud might well affect the right of the party perpetrating it to receive a patent even though he was in fact the first of the parties to the interference to use the invention, it obviously could not change the historical fact of priority itself or authorize a finding that another party had priority of invention whose use had actually been anticipated by the first party. What effect, if any, a finding of such fraud might have upon the rights of other parties than the perpetrator would appear to be a matter for determination by the Commissioner of Patents and Trademarks and the courts in appropriate litigation, not by the Board in the interference proceeding or by the district court upon review under § 146 of the Board's determination of priority of invention in that proceeding. We note that the Board of Patent Interferences itself has taken the position that it should consider only those issues of fraud which relate to priority. *See Poole v. Sugaya v. Iwabuchi,* 182 U.S. P.Q. 571 (Pat.Off.Bd. of Pat.Int.1974). It may be that the Board is empowered to consider other issues of fraud as being ancillary to priority, as the Court of Customs and Patent Appeals appears to have held.[14] This we need not here decide. But in an action under § 146 which, as the Supreme Court pointed out in *Sanford v. Kepner,* 344 U.S. 13, 15, 73 S.Ct. 75, 97 L.Ed. 12 (1952), is in the first instance directed solely to the review of the decision of the Board on the factual issue of priority, issues of fraud involving other matters are irrelevant to that issue and may not be entertained if they have not been considered by the Board. It is for these reasons that this court framed the question to be argued in these appeals as we did.

The defendant, Montedison, urges that the district court did apply the discre-

---

**12.** *See Kirschke v. Lamar,* 426 F.2d 870, 874 (8th Cir. 1970).

**13.** As stated by the Supreme Court in *Sanford v. Kepner,* 344 U.S. 13, 14, 73 S.Ct. 75, 76, 97 L.Ed. 12 (1952), the issue of priority of inven-

tion poses the question "which of the two first used the device."

**14.** *Norton v. Curtiss,* 433 F.2d 779, 57 C.C.P.A. 1384 (1970); *Langer v. Kaufman,* 465 F.2d 915, 59 CCPA 1261 (1972).

tionary rule in the present litigation and in the exercise of its discretion refused to allow the complaints to be amended so as to raise the issue of fraud in the interference proceeding. We do not so read the record, however. We are satisfied that the court denied the plaintiffs' motions for two reasons, one substantive and the other procedural. The substantive reason upon which the court relied (398 F.Supp. at pp. 422–423) was that it was not empowered to entertain an issue of fraud in the interference proceeding which had not been raised before the Board. It was the correctness of this proposition of law which the court suggested to counsel should be certified for interlocutory appeal under 28 U.S.C. § 1292(b) and it was this question which was the controlling question of law to which, we believe, the court referred in the order appealed from and which we by our order determined to be the question on appeal.

It is true, as the defendant Montedison points out, that the court, after announcing its decision based on the general rule, did add some further discussion in its opinion to clarify, as it said, the issues for trial. In the course of these additional remarks the court pointed to the length and complexity of the proceedings in the Patent Office and before the court, to the fact that the plaintiffs had made no effort to bring the alleged fraud to the attention of the Patent Office, and had presented no compelling excuses for failing to do so. Expressing its view that the time for resolution of the dispute had long since passed and that the public interest in any fraud issues could be amply protected by being raised in the context of validity defenses in infringement suits or as affirmative antitrust actions, the court indicated that it regarded it to be its duty to confine the proceeding to issues decided by the Board. The court, in making these observations, did not indicate that it was exercising discretionary power but merely that it was following the mandatory rule which excludes issues not litigated before the Board. Indeed, it made no findings on the basis of which an exercise of discretion could have been predicated. The whole discussion appears to have been de-

signed to show that the application of the rule by which it believed itself bound would not, in fact, be unjust under the circumstances of the case.

■ We need mention only briefly the procedural ground relied upon by the district court in support of its order. This was that amendment of the complaints was unnecessary because any issue which has been presented to the Board may be presented to the court under § 146 even though not spelled out in the complaint, and, conversely, an issue not presented to the Board may not be tried in a § 146 action even though specifically raised in the complaint. 398 F.Supp. at p. 422. Whatever may be the merits of this rule in other circumstances, we think it has no application here. For certainly a defendant in a § 146 action is entitled to notice in the complaint, or by amendment to it, of an issue of fraud which, in the exercise of the court's discretion, has been permitted for the first time to be litigated in that action.

We have not overlooked that part of Standard Oil's motion which sought to add to its complaint a claim for a declaratory judgment as to the validity of Patent No. 3,715,344. This was denied by the district court because Standard Oil had not been charged with infringement and was not likely ever to be so charged since it did not practice the invention and because it had not shown reasons why it should be permitted to assert such a claim on behalf of its subsidiary, Amoco Chemicals Corporation, which did practice it. The correctness of this action of the district court, to the extent that it involved the question of law posed by these appeals, is determined by our decision of that question. However, to the extent that the court's action involved other questions, we need only point out that, pursuant to our direction, they have not been argued and are not now being decided. They will, therefore, be open for consideration upon appeal from the final judgment in the case, if and when one is taken.

For the reasons stated the case must go back to the district court for reconsidera-

tion, under the court's discretionary power, of plaintiffs' motions to amend the complaints to the extent that they seek to incorporate the issue of fraud alleged to have been practiced by the defendant Montedison in the interference proceeding.

The order of the district court will be vacated to the extent that it denies the plaintiffs leave to amend their complaints to add thereto issues of fraud in the interference proceeding, and the cause will be remanded for further proceedings not inconsistent with this opinion.