NITTO BOSEKI CO., LTD., Plaintiff,

v.

OWENS–CORNING FIBERGLAS CORP., Defendant.

Civ. A. No. 83–870–JLL.

United States District Court,
D. Delaware.

June 20, 1984.

Roderick R. McKelvie of Ashby, McKelvie & Geddes, Wilmington, Del., Barry E. Bretschneider and Charles A. Wendel of Wegner & Bretschneider, Washington, D.C., of counsel, for plaintiff.

Douglas E. Whitney of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Hiram P. Settle of Hiram P. Settle, P.C., Washington, D.C., and Paul N. Kokulis of Cushman, Darby & Cushman, Washington, D.C., of counsel, for defendant.

## OPINION

LATCHUM, Senior District Judge.

This is an action brought by plaintiff, Nitto Boseki Co., Ltd., against defendant, Owens-Corning Fiberglas Corp., pursuant to 35 U.S.C. § 146 and 28 U.S.C. § 1338(a), to review the decision of the Board of Patent Interferences of the United States Patent Office (the "Board") which awarded priority to the defendant on count 1 of three counts that were the subject of the interference proceeding in Interference No. 100,382. (Docket Item ["D.I."] 1.) The defendant filed an answer in which it requests that this Court affirm the priority award to it on count 1 and also filed three counterclaims. (D.I. 5.) Counterclaim I requests the Court to reverse the Board's award of priority of invention on counts 2 and 3 to plaintiff and award priority on those counts to defendant. (*Id.*, ¶¶ 1–9.) Counterclaim II alleges that plaintiff's patent is invalid because certain amendments were made in plaintiff's corresponding British patent application without having been licensed for filing abroad in violation of 35 U.S.C. §§ 184 and 185 and thus plaintiff's patent cannot serve as a basis of a priority award to plaintiff. (*Id.*, ¶¶ 10–11.) Counterclaim III alleges that plaintiff's predecessor-in-title filed a false declaration regarding foreign applications during the patenting process which conduct deprives the plaintiff of any benefit of its patent in interference and renders that patent unenforceable. (*Id.*, ¶¶ 18–26.)

The case is now before the Court on plaintiff's motion to dismiss all of defendant's counterclaims for various reasons hereinafter discussed. (D.I. 6.)

## I. BACKGROUND FACTS

The plaintiff is the owner by mesne assignment of U.S. Patent No. 3,905,790 ("the Strickland patent"), issued on September 16, 1975, to the inventor, Edward T. Strickland, based on an application, Serial No. 500,303 filed August 26, 1974. (D.I. 1, Ex. A.) The defendant is the owner by assignment of Hellmut I. Glaser's U.S. Patent Application Serial No. 649,995 ("Glaser application"), a continuation of a prior application Serial No. 523,400 filed on November 13, 1974. (D.I. 1, Ex. B.)

On December 10, 1979, the United States Patent and Trademark Office ("PTO") declared an interference between the Strickland patent and the Glaser application. The invention in interference relates to a method and apparatus for making glass fibers. The issue between the parties in interference was defined in three counts.[1] At the conclusion of the interference proceedings, the Board, in a single decision, split the counts between the two parties, that is, priority of invention of the subject matter of count 1 was awarded to defendant and priority of invention of the subject matter of counts 2 and 3 was awarded to plaintiff. (D.I. 1, Ex. C.) Essentially, the Board's decision was based on its finding that defendant's Glaser application disclosed count 1 and Glaser was its first inventor. It also held that defendant's lack of disclosure did not support some of the language of counts 2 and 3 and therefore

---

1. Interference Count 1 corresponds to claim 1 of the Strickland patent, Count 2 corresponds to claim 8 of the Strickland patent, and Count 3 corresponds to claim 24 of the Strickland patent. (D.I. 1, Ex. C at 4.)

priority on those counts was awarded to plaintiff's Strickland patent. (D.I. 1, Ex. C.)

The plaintiff on October 24, 1983, filed a timely request for reconsideration of the Board's decision only insofar as it awarded priority of count 1 to the defendant. The Board denied plaintiff's reconsideration motion on November 18, 1983. (D.I. 1, Ex. D.) Defendant made no similar request for reconsideration of any portion of the Board's decision although it did submit a counter-argument to the Board with respect to plaintiff's motion for reconsideration. (D.I. 1, Ex. D.)

Then on December 19, 1983, plaintiff timely filed this action under 35 U.S.C. § 146 seeking a reversal of the Board's decision which awarded priority of invention on count 1 to the defendant.

The defendant, on January 9, 1984, filed an answer in which defendant seeks an affirmance of the Board's award of count 1 to defendant and asserted three counterclaims as indicated above.

## II. DISCUSSION

### 1. *Defendant's Counterclaim I*

[1] Counterclaim I seeks a review and reversal of the Board's decision which awarded priority of invention on counts 2 and 3 to the plaintiff. The plaintiff has moved to dismiss Counterclaim I on the ground that it was untimely filed as required by 35 U.S.C. § 146 and 37 C.F.R. § 1.304(a).

35 U.S.C. § 146, the statutory provision under which this action is brought, provides that: "*any* party to an interference *dissatisfied* with the decision of the board of patent interferences on the question of priority, may have remedy by civil action, if commenced within such time after such decision, not less than 60 days, as the Com-

missioner appoints...." (Emphasis added.)

37 C.F.R. § 1.304(a), Rule of Practice in Patent Cases, provides in pertinent part, as follows:

The time ... for commencing a civil action (§ 1.303) is sixty days from the date of the decision of ... the Board of Patent Interferences. If a request for rehearing or reconsideration, or modification of the decision, is filed within the time provided pursuant to ... 1.256(b), the time for ... commencing a civil action shall expire at the end of the sixty day period or thirty days after action on the request, whichever is later.

Based on the above quoted statute and rule, plaintiff contends that because the defendant failed to request reconsideration of the Board's decision awarding priority of invention on counts 2 and 3 to plaintiff, the Board's decision on counts 2 and 3 became final on November 19, 1983, that is, 60 days after the Board's original decision entered on September 22, 1983, and since this action was not commenced until December 19, 1983 and Counterclaim I was not filed until January 9, 1984, the counterclaim is untimely.

On the other hand, defendant argues that plaintiff's filing of its complaint within the time provided by 35 U.S.C. § 146 and 37 C.F.R. § 1.304(a) invoked the jurisdiction of this Court and that thereafter defendant timely filed its answer including the counterclaims within the time limits prescribed by the applicable Rules of Federal Civil Procedure.[2]

Thus, the question presented is whether, once an action has been timely filed seeking review of a portion of the Board's decision, a counterclaim seeking a review of other portions of the same decision is governed by the Federal Rules of Civil

---

**2.** Service of the summons and complaint was made upon the defendant on Monday, December 19, 1983 (D.I. 3) and the Answer with Counterclaims was filed on Monday, January 9, 1984 (D.I. 5.) Rule 12(a), Fed.R.Civ.P., requires an answer and counterclaim to be filed within 20 days after service of the summons and complaint. Rule 6(a), Fed.R.Civ.P., provides that, if

the 20th day falls on a Saturday, Sunday or legal holiday, the 20-day period runs until the end of the next day. Because the 20-day period to file defendant's answer and counterclaim fell on Sunday, January 8, 1984, the defendant had until the end of January 9, 1984 to file its answer and counterclaim, which it did. (D.I. 5.)

Procedure or by the 60-day rule of Section 146 as modified by the reconsideration rule of 37 C.F.R. § 1.304(a).

Essential to plaintiff's dismissal motion is the acceptance of the proposition that the three interference counts involved in the same interference proceedings before the Court were totally separate and unrelated and that the Board rendered two unrelated awards—one on count 1 and one on counts 2 and 3. Based on the present record, however, the Court is unable to accept the notion that the Board rendered two completely unrelated awards. This is so for the following reasons: The interference proceedings involved only two parties, plaintiff assignor Strickland and defendant's assignor Glaser. Both parties through their respective assignors are parties to this action. The interference was between the issued Strickland patent and the Glaser application. Both the Strickland patent and the Glaser application involved one invention, "a method and apparatus for manufacturing glass fibers," and the three counts in interference defined the invention in terms of varying scope. At the conclusion of the interference proceedings, the Board rendered a single decision splitting the counts between the two parties. The Board held that the Glaser application (defendant) disclosed count 1 and was entitled to the benefit of the filing date of an earlier application filed prior to the earliest alleged date claimed by Strickland (plaintiff). Thus Glaser was awarded priority of invention on count 1. The Board also determined that counts 2 and 3 were narrower in scope than count 1 and that Glaser's application did not support some of the specific language in counts 2 and 3. Thus, the Board awarded priority of invention in counts 2 and 3 to Strickland (plaintiff) because of Glaser's lack of disclosure. (D.I. 1, Ex. C.)

What in fact the Board decided was that as to three aspects of the same invention, defendant (Glaser's application) had priority of invention on count 1 and that plaintiff (Strickland patent) had priority of the narrower aspects of the invention defined in counts 2 and 3. While the award was split

by the Board's decision, it nevertheless was one decision establishing the priority of invention of related aspects of the disclosures found in the issued Strickland patent and in the competing Glaser application which was entitled to an earlier filing date. However, it is viewed, the decision simply divided the "same ball of wax." This being so, the Court finds that the three interference counts were sufficiently interrelated to be deemed to have arisen from the same "transaction" as that term is used in Rule 13 of the Federal Rules of Civil Procedure.

Consequently, when the plaintiff timely filed this action under 35 U.S.C. § 146 and 37 C.F.R. § 1.304(a) to review a portion of the Board's decision awarding priority of count 1 to defendant, the jurisdiction of this Court was properly invoked over the entire Board's decision—the transaction—which would permit the defendant to raise the propriety of the awards to plaintiff on counts 2 and 3 by way of a timely filed counterclaim under Rule 12, Fed.R.Civ.P.

While the parties and the Court have found no reported case exactly on point, there is precedent which leads to the conclusion reached here by this Court. In *Shaffer Tool Works v. Joy Manufacturing Co.*, 352 F.Supp. 822 (S.D.Tex.1972), four (4) counts were involved in interference before the Board. The Board awarded priority on one count to the defendant Joy and three counts to the plaintiff Shaffer. Within the 60 days allotted for Section 146 review, Shaffer filed a complaint in the district court seeking to review the Board's decision as to the single count awarded to Joy. Within the 20-day period prescribed by Fed.R.Civ.P. 12 for answering and counterclaiming but more than 60 days after the Board's decision, Joy filed a counterclaim seeking reversal of the Board's award to Shaffer on the three other counts. Shaffer thus moved to dismiss Joy's counterclaim on the ground that it was permissive and accordingly required a jurisdictional basis independent of Shaffer's complaint. Since that basis was the 60-day provision of Section 146, Shaffer argued that the court lacked jurisdiction to hear a counterclaim

filed outside that limit though within the 20-day period under Federal Rules of Civil Procedure for filing counterclaims. The court denied Shaffer's motion to dismiss Joy's counterclaim.

In *Shaffer*, as in this case, plaintiff contended that the Board rendered two unrelated decisions. The court considered this issue and ruled:

> Indeed, the crux of the plaintiff's complaint is that at the time the Interference Board found for Walker on counts 1, 2 and 3, it erred in holding that Walker's application did not also disclose the invention set forth as count 4 of the interference between the Walker and Crickmer applications. (Original Complaint, para. VIII). Simply put, the Board decided that as to four aspects of the same invention Walker had priority of invention on three and Crickmer on one. *While the award was "split," nevertheless it was one decision on the priority of invention of related aspects of competing patent applications.*

358 F.Supp. at 824 (emphasis added).

After deciding that the Board had rendered only one decision, the court held that Joy's counterclaim on the other three counts was proper, stating:

> Here, the interference arose because the applications disclosed *substantially the same inventions,* and the allegations of the plaintiff's complaint indicate that the counts are so related that the Board erred in holding that an application which disclosed counts 1, 2 and 3, did not necessarily disclose count 4. That being the case, there is enough of a logical relationship between the counts to find that they arose from the same "transaction," that is, the decision of the Interference Board making a split-award of priority on competing patent applications, and to hold that the filing of the plaintiff's complaint within the statutory jurisdictional period invoked the Court's jurisdiction over the entire transaction and permitted the defendant to raise the propriety of the award to Walker on counts 1, 2 and 3, by way of a timely counterclaim under Rule 12.

*Id.* (Emphasis in original.)

The only difference between *Shaffer* and the present case is the fact that there was no request for reconsideration in *Shaffer*. However, in the circumstances of this case, that factual difference appears immaterial. As pointed out above, 37 C.F.R. §§ 1.303 and 1.304(a) provide that an action under Section 146 be commenced within 60 days from the decision of the Board, unless a petition for reconsideration is filed in which case, the action must be filed within 30 days after disposition of such petition. Thus, the effect of filing a petition for reconsideration is to enlarge the time for presenting a Section 146 review proceeding.

This was also the holding in *Union Carbide Corporation v. Traver Investments, Inc.*, 201 F.Supp. 763 (S.D.Ill.1962). In that case, after the Board made its initial priority decision, Traver filed a petition for reconsideration. The Section 146 action was then filed within the extension afforded by the petition for reconsideration. Union Carbide thereafter filed a timely counterclaim under the Federal Rules of Civil Procedure but filed after the expiration of the 60-day limit of Section 146 as extended by the Reconsideration Rule. Traver moved to dismiss the counterclaim, as plaintiff has done here, but that motion was denied. The court held that Section 146 did not legislate special procedural standards, and once a Section 146 complaint was timely filed, the Federal Rules of Civil Procedure would apply. Specifically, the court said:

> When a complaint based upon Section 146 is filed within the statutory time limit and that complaint makes each indispensable person a party to the suit, the jurisdiction of the court is fixed. Thereafter, although the cause be a creature of statutory creation, the procedural direction of the suit is governed by the Federal Rules of Civil Procedure. 28 U.S.C. *Under Rule 12, Carbide had 20 days after the service upon it of summons and a copy of the Howard com-*

*plaint to answer or otherwise plead to the complaint. Rule 13 makes specific provision for the filing of counterclaims and cross-claims which arise out of the transaction or occurrence which is the subject matter of the complaint.*

201 F.Supp. at 768 (emphasis added).

The plaintiff has emphasized and relied upon *Adams v. Wolinski*, 285 F.2d 133, 48 CCPA 774 (1961), in support of its position. This Court finds that the *Wolinski* case is inapposite for the well-stated reasons given by Chief Judge Mercer in the *Union Carbide* case, *supra* at 768–69, which reasons, in the interest of brevity, need not be repeated here.

The Court will therefore deny plaintiff's motion to dismiss defendant's Counterclaim I.

## 2. *Defendant's Counterclaim II*

[2, 3] As indicated above, defendant's Counterclaim II raises the issue of whether the plaintiff's Strickland patent is invalid because the plaintiff's predecessor-in-title allegedly violated 35 U.S.C. §§ 184 and 185. The plaintiff contends that this patentability issue is not a proper question to be considered by the Court in this Section 146 action and accordingly Counterclaim II should be dismissed. The Court agrees. A civil action brought under 35 U.S.C. § 146 is essentially a proceeding to review the action of the Board of Patent Interferences in an interference proceeding denying priority of invention to a plaintiff, i.e., a party dissatisfied with the Board's decision on the question of priority. While in form a Section 146 proceeding is a trial *de novo*, the review proceeding is ordinarily subject to the general rule of estoppel applicable to proceedings for review of administrative agency action. Thus, consideration of issues ancillary to priority is limited to those issues which are raised and decided before the Board in the interference proceedings. *See Standard Oil Co. v. Montedison*, 540 F.2d 611, 616 (3d Cir.1976), and cases cited

at notes 7 and 8. The Board in this case refused to consider "whether [defendant] Glaser was entitled to prevail in this interference because of Strickland's alleged failure to obtain a license required by 35 U.S.C. 184 [since] the issue is not ancillary to priority" and the Board declined "to expand the definition of ancillary issues to embrace patentability under 35 U.S.C. 184 and 185." (D.I. 1, Ex. C at 21.) Thus, this Court concludes that the issue of patentability under Sections 184 and 185 should not be passed upon in the first instance when the Board declined to rule on that question below.

The defendant, nevertheless, argues that the Supreme Court holdings in *Hill v. Wooster*, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502 (1890), and *Sanford v. Kepner*, 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12 (1952), require this Court to pass on the validity of the patent if the Board is reversed and priority is awarded to the plaintiff on count 1.

In *Hill v. Wooster*, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502 (1890), Wooster and Hill were each applicants for a patent for a "cabinet creamery." The Patent Office awarded priority to Hill, but the circuit court, in a proceeding brought under Section 4915 of the Revised Statutes[3] by Wooster, reversed the finding of priority by the Interference Examiner and awarded priority to Wooster. The circuit court failed to address the patentability questions of Wooster's application which the parties were apparently willing to ignore. The Supreme Court held, however, that "neither the Circuit Court nor this Court can overlook the question of patentability." *Id.* at 698, 10 S.Ct. at 230. The Supreme Court thus ruled that the issue of patentability was mandated by Section 4915 which provided that if a circuit court adjudges an *applicant* entitled to receive a patent for his invention, the court shall authorize the Commissioner to issue a patent:

---

**3.** Section 4915 of the Revised Statutes was the predecessor of 35 U.S.C. § 146. However, R.S. 4915 only gave a right to a patent *applicant* as

distinct from a patentee to bring a bill in equity to force the Commissioner to issue a patent.

It necessarily follows that no adjudication can be made in favor of the applicant, unless the alleged invention for which a patent is sought is a patentable invention. The litigation between the parties on this bill cannot be concluded by solely determining an issue as to which of them in fact first made a cabinet creamery. A determination of that issue alone, in favor of the applicant, carrying with it, as it does, authority to the Commissioner to issue a patent to him for the claims in interference, would necessarily give the sanction of the court to the patentability of the invention involved.

132 U.S. at 698, 10 S.Ct. at 230.

In *Sanford v. Kepner*, 344 U.S. 13, 73 S.Ct. 75, 97 L.Ed. 12 (1952), an interference had been declared between Sanford's application and the opposing application by Kepner. The Board of Interference awarded priority of invention to Kepner who thereupon received a patent covering the counts of the interference. Sanford, having lost on the issue of priority before the Board, brought a bill in equity pursuant to Section 4915 of the Revised Statutes in the district court both on the issue of priority and on the contention that Kepner's then-patented device was unpatentable on the ground of prior use. After finding against Sanford's application on the priority issue, the district court refused to consider the validity of Kepner's patent. The Third Circuit Court of Appeals affirmed. 195 F.2d 387. On certiorari, the Supreme Court affirmed and ruled:

> The obvious purpose of the quoted part of R.S. § 4915 is to give a judicial remedy to an applicant who has been finally denied a patent because of a Patent Office decision against him and in favor of his adversary on the question of priority. When the trial court decides this factual issue of priority against him and thus affirms the refusal of the patent by the Patent Office, he has obtained the full remedy the statute gives him. Only if he wins on priority may he proceed. In that event, the statute says, the court may proceed to "adjudge that such applicant

is entitled, according to law, to receive a patent for his invention . . . ." So adjudging, it may authorize issuance of the patent. But judicial authorization of issuance implies judicial sanction of patentability and for this reason this Court has said, "It necessarily follows that no adjudication can be made in favor of the applicant, unless the alleged invention for which a patent is sought is a patentable invention." *Hill v. Wooster*, 132 U.S. 693, 698 [10 S.Ct. 228, 230, 33 L.Ed. 502]. The principle of the *Hill* case is that the court must decide whether claims show patentable inventions before authorizing the Commissioner to issue a patent. No part of its holding or wording nor of that in *Hoover Co. v. Coe*, 325 U.S. 79 [65 S.Ct. 955, 89 L.Ed. 1488], requires us to say R.S. § 4915 compels a district court to adjudicate patentability at the instance of one whose claim is found to be groundless. Sanford's claim was found to be groundless.

> It is unlikely that this equity proceeding would develop a full investigation of validity. There would be no attack on the patent comparable to that of an infringement action. Here the very person who claimed an invention now asks to prove that Kepner's similar device was no invention at all because of patents issued long before either party made claim for his discovery. There is no real issue of invention between the parties here and we see no reason to read into the statute a district court's compulsory duty to adjudicate validity.

Thus, as this Court reads the *Hill* and *Sanford* cases the logic is that it is incumbent upon a district court to consider patentability issues when it has ruled in favor of a Section 146 *applicant* as distinguished from a *patentee* on the issue of priority because it must thus direct the PTO to issue a patent to the applicant. However, when the dissatisfied plaintiff in a Section 146 proceeding is a *patentee* who wins on priority of invention, there appears to be no reason to proceed further and direct the PTO to issue a patent which has already

issued. Hence, this Court is of the opinion in the peculiar circumstances of this case, that if this Court reverses the Board and rules that plaintiff's Strickland patent has priority of invention, it should not proceed in this action to consider whether the patent is invalid for violation of 35 U.S.C. §§ 184 and 185. Undoubtedly, if the plaintiff was simply an applicant rather than a patentee, then under the *Hill* doctrine this Court would be required to determine the validity of the invention before ordering the Patent Office to issue a patent. Consequently, the Court will dismiss defendant's Counterclaim II and leave the resolution of the validity of the Strickland patent, if it is found to have priority of invention, for determination in an infringement action.

### 3. *Defendant's Counterclaim III*

Defendant's Counterclaim III raises the question whether the Strickland patent is enforceable because of alleged fraud committed upon the Patent Office during its prosecution. Defendant contends this Court must consider this question if it rules in favor of the plaintiff's Strickland patent on priority of invention. First, it must be noted that the false oath or fraud issue alleged in Counterclaim III was raised before the Board. The Board found that this issue, in accordance with existing authority, was ancillary to priority, *Langer v. Kaufman*, 465 F.2d 915, 920, 59 CCPA 1261 (1972); *Norton v. Curtiss*, 433 F.2d 779, 783, 57 CCPA 1384 (1970), and then determined that defendant had failed to prove by clear and convincing evidence that an intentional false oath had been made. (D.I. 1, Ex. C at 22.) Since this false oath or fraud issue was first raised before the Board and ruled upon, it is a proper issue for review by this Court in this Section 146 action in the event that the Court reverses the Board's priority award on count 1 and awards that count to the plaintiff and affirms the priority award on counts 2 and 3 also to plaintiff. *See Standard Oil Co. v. Montedison*, 540 F.2d 611, 617 (3d Cir. 1976). This is not the situation where the issue of fraud in the prosecution of the patent is first raised in the Section 146

proceeding. It was raised before and decided by the Board and is a proper subject for review here if priority of invention is awarded to plaintiff. Consequently, plaintiff's motion to dismiss defendant's Counterclaim III will be denied.

An Order will be entered in accordance with this Opinion.