**BRUNSWICK CORPORATION, Plaintiff,**

v.

**RIEGEL TEXTILE CORPORATION, Defendant.**

**No. 83 C 8726.**

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1985.

---

Lloyd Mason, Wood, Dalton, Phillips, Erwin C. Heininger, Ned Robertson, Mayer, Brown & Platt, Chicago, Ill., John G. Heimovics, Brunswick Corp., Skokie, Ill., for plaintiff.

Alan I. Greene, Robert F. Ward, Pamela J. Kempin, J.D. Gleming, Chadwell & Kayser, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

This action was brought by Brunswick Corporation ("Brunswick") under 35 U.S.C. § 146 [1] to review a decision by the Board of Patent Interferences ("Board") whereby the Board awarded priority of invention to Riegel Textile Corporation ("Riegel"). Presently before the court are two motions; Riegel's motion for a pretrial ruling and Brunswick's motion to compel the production of documents and the inspection of

---

1. Title 35 U.S.C. § 146 provides:

Any party to an interference dissatisfied with the decision of the Board of Patent Appeals and Interferences on the interference, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Appeals for the Federal Circuit, and such appeal is pending or has been decided.

In such suits the record in the Patent and Trademark Office shall be admitted on motion of either party upon the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony. The testimony and exhibits of the record in the Patent and Trademark Office when admitted shall have the same effect as if originally taken and produced in the suit.

equipment. Before proceeding to discuss the merits of those motions, a brief summary of the pertinent facts is in order. Further reference to the facts will be provided as needed.

This dispute concerns a method of drawing and blending textile fiber and metal filaments to produce antistatic yarn, which is used to produce antistatic fabric. Garments made of antistatic fabric are useful, if not necessary, in oil refineries, laboratories and other locations where volatile gases are used or produced. Static-free garments reduce the danger that sparks of static electricity will ignite such explosive gases.

Brunswick is the assignee of William G. Klein, whose application for a patent on a process of blending metal and textile fibers was filed on April 20, 1970. Riegel is the assignee of Reid C. Goodbar and Arthur M. Pressley, whose application was filed on August 14, 1970. On November 21, 1972, the Patent Office issued a patent on the process to Riegel. Subsequently, however, on March 6, 1975, the PTO declared patent interference proceeding No. 98,935 to determine priority of invention between the conflicting claims of Brunswick and Riegel. In that interference proceeding, the motion period[2] ended on August 6, 1975 and discovery closed October 1977.[3]

On November 4, 1983, over eight years later, the Board issued its unanimous decision awarding priority to Riegel. The Board found that Brunswick's patent application did not disclose the process at issue and thus Brunswick had no right to make the claims made in its application. Riegel, consequently, was entitled to priority. The Board also found that Riegel had failed to prove either conception or reduction to practice prior to the filing date of Riegel's patent application. In addition, Brunswick was barred from pursuing its fraud on the Patent Office claim against Riegel because Brunswick had failed to file a motion to dissolve raising that issue during the motion period. Finally, the Board found it unnecessary to decide Brunswick's claim of derivation. *See Goodbar v. Klein,* 221 U.S. P.Q. 624 (Bd.Pat.Int.1983).

Brunswick filed suit under 35 U.S.C. § 146 seeking review of the Board's decision. After filing suit, Brunswick served Riegel with a document request seeking, at least in part, documents relating to Brunswick's claims of fraud on the Patent Office and derivation. Brunswick sought also to examine and videotape Riegel's draw frames used in producing antistatic yarns. Riegel refused to produce the requested documents or to allow the inspection and videotaping. Brunswick then filed its motion to compel the production of documents and the inspection of equipment. Riegel, in addition to responding to Brunswick's motion to compel, filed a motion for pretrial ruling. In that motion, Riegel seeks to limit the evidence in this proceeding to the evidence presented to the Board, except for such evidence as is shown to have been unavailable for submission to the Board. Riegel's motion, if granted, would effectively preclude further discovery in this action. These two motions, then, overlap to a considerable degree.

Brunswick's and Riegel's disagreement begins with a dispute over the nature of a § 146 proceeding. Brunswick contends that a § 146 proceeding is a trial *de novo* wherein evidence, in addition to the evidence presented to the Board, may be freely introduced. From this premise, Brunswick concludes that discovery should not be limited. Riegel, on the other hand, argues that a § 146 proceeding is essentially an appellate proceeding. Subject to certain exceptions, evidence therein is limited to that presented to the Board. Resolution of these opposing contentions will provide a framework for deciding both motions before the court.

 Both parties are in part correct as to the nature of a § 146 proceeding. A § 146 civil action is a hybrid in that it has characteristics of both a trial *de novo* and

---

**2.** *See* 37 C.F.R. § 1.207(b)(3).

**3.** *See* 37 C.F.R. § 1.287(a)-(c).

an appellate review. *Velsicol Chemical Co. v. Monsanto Co.*, 579 F.2d 1038, 1043 (7th Cir.1978); *Rex Chainbelt, Inc. v. Borg-Warner Corp.*, 477 F.2d 481, 484 (7th Cir. 1973). A § 146 proceeding is conducted as a trial *de novo* in that, in part, either party may introduce "live" testimony of witnesses whose depositions are already part of the record of the proceeding before the Board. *Velsicol Chemical Corp. v. Monsanto Co.*, 579 F.2d 1038, 1045 (7th Cir. 1978). In addition, either party may introduce other evidence that was not before the Board. *Rex Chainbelt, Inc. v. Borg-Warner Corp.*, 477 F.2d 481, 484 (7th Cir. 1973). The right to present new evidence is not, however, unlimited. New evidence is permitted when the additional evidence was unavailable during the interference proceeding or when necessitated by special circumstances. *Piher, S.A. v. CTS Corp.*, 664 F.2d 122, 125 (7th Cir.1981). Examples of "special circumstances" given by the courts are an intervening change in the law, the introduction of a new issue or the admission of other new evidence which requires new evidence in response. *Id.; Velsicol Chemical Corp. v. Monsanto Co.*, 579 F.2d 1038, 1046 n. 10 (7th Cir.1978). The proponent of new evidence not available during the interference proceeding must show that the new evidence was unavailable in spite of the proponent's diligence in preparing its case. *Id.* at 1046.

■ On the other hand, a § 146 proceeding is essentially an appellate action. *Rex Chainbelt v. Borg-Warner Corp.*, 477 F.2d 481, 484 (7th Cir.1973). The district court's scope of review is quite narrow:

Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, *unless the contrary is established by testimony which in character and amount carries thorough conviction.*

*Morgan v. Daniels*, 153 U.S. 120, 125, 14 S.Ct: 772, 773, 38 L.Ed. 657 (1894) (emphasis added). A § 146 proceeding, because of it's appellate characteristics, is subject to the general rules of waiver and estoppel. *Standard Oil Co. v. Montedison, S.p.A.*, 540 F.2d 611, 616 (3d Cir.1975). Thus, a district court may not consider an issue ancillary to the issue of priority unless the issue was raised and decided during the interference proceeding. *Id.; Nitto Boseki Co. v. Owens-Corning Fiberglass Corp.*, 589 F.Supp. 527, 532 (D.Del.1984).

■ In sum, a § 146 proceeding, is, on the whole, an appellate proceeding and only becomes a trial *de novo* in limited circumstances. With this premise in mind, the court now turns to the motion at issue.

## MOTION FOR PRETRIAL RULING

Riegel, in its motion for pretrial ruling, seeks to limit the evidence in this proceeding to the evidence presented to the Board during the interference proceeding. As to the issue of Brunswick's right to make the claims made in its patent application, Riegel argues that the evidence should be limited to that before the Board except where it is shown that the newly submitted evidence was not available for submission to the Board. As to Brunswick's claims of fraud and derivation, Riegel urges this court to rule that no evidence on those issues may be submitted because the Board did not decide either of those two issues.

Riegel's arguments have considerable merit. As discussed previously, a district court, in a § 146 proceeding, may not consider an issue ancillary to priority unless the issue was presented and decided by the Board. Consideration of Riegel's motion, then, must begin with this court's determination of what was decided by the Board.

■ As to the issue of Brunswick's right to make the claims made in interference, that issue is properly before this court. Both sides presented evidence on that issue during the interference proceeding *Goodbar v. Klein*, 221 U.S.P.Q. 624 (Bd.Pat.Int. 1983). In its opinion, the Board discussed the right to make issue at length. *Id.* at

625–28. The Board clearly made a decision on that issue, finding that Brunswick had no right to make the claims in interference. *Id.* at 625, 628. Thus, both sides may present, at least, the evidence on this issue that it presented to the Board.[4] To present any additional evidence, the proponent must show either that the new evidence was unavailable during the interference proceeding in spite of the proponent's diligence or that presentation of new evidence is justified by special circumstances as discussed previously. *Velsicol Chemical Corp. v. Monsanto Co.*, 579 F.2d 1038, 1046, n. 10 (7th Cir.1978).

■ As to Brunswick's claim that Riegel committed fraud on the Patent Office, that claim is not properly before this court. The Board did not address whether Riegel had committed the acts charged by Brunswick. *Goodbar v. Klein*, 221 U.S.P.Q. 624 (Bd.Pat.Int.1983). Rather, the Board simply decided that Brunswick was precluded from pursuing that claim because of Brunswick's failure to raise the fraud claim during the motion period. *Id.* at 625, 631. Thus, the only issue relating to Riegel's alleged fraud on the Patent office that is before this court is whether the Board's conclusion precluding Brunswick from pursuing that claim is erroneous.

Brunswick, however, has presented three arguments urging this court to consider its fraud on the Patent Office claim. First, Brunswick argues that the procedural rules relating to interference proceedings in effect when the Board rendered its decision, November 4, 1983, were different than the rules in effect during the motion period, the summer of 1975. The earlier rules, Brunswick contends, precluded motions based on evidence extrinsic to official records and printed publications. Thus, the earlier rules precluded Brunswick from raising Riegel's fraud by way of motion.

Brunswick's argument centers on two procedural rules. Rule 231 and Rule 258(a), and the changes in those rules. In 1983, Rule 231, in pertinent part, provided that:

> Within the period set in the notice of interference for filing motions any party to an interference may file a motion seeking:
> (1) To dissolve as to one or more counts, except that such motion based on facts sought to be established by affidavits, declarations or evidence outside of official records and printed publications will not normally be considered....

37 C.F.R. § 1.231(a)(1) (1982). In 1975, Rule 231 provided:

> Within the period set in the notice of interference for filing motions any party to an interference may file a motion seeking:
> (1) To dissolve as to one or more counts, except that such motion based on facts sought to be established by affidavits, declarations or evidence outside of official records and printed publications will not normally be considered....

37 C.F.R. § 1.231(a)(1) (1975). Obviously, these two versions of Rule 231 are identical.

In 1983, Rule 258, in pertinent part, provided that:

> (a) In determining priority of invention, the Board of Patent Interferences will consider only priority of invention on the evidence submitted, and matters ancillary thereto. A party shall be entitled to raise a matter which is ancillary to priority only if:
> (1) The matter was raised by the party in a motion under § 1.231(a), and:
> (i) The motion was transmitted to and decided by the primary examiner; or
> (ii) Consideration of the motion was deferred to final hearing; or
> (iii) The motion was dismissed as being based on facts sought to be established by affidavits, declarations or evidence outside of official records and printed publications, or as being based on a

---

4. This court is not, of course, expressing any opinion on the admissibility of any evidence which will be presented.

ground which would require the taking of testimony; or

(2) The matter was raised by the party in opposition to a motion under § 1.231(a)–(2), (3), (4) or (5) which was granted over his opposition; or

(3) The party shows good reason why the matter was not raised as specified in paragraphs (a)(1) or (a)(2) of this section.

(b) To prevent manifest injustice the Board of Patent Interferences may in its discretion consider a matter which is ancillary to priority even though it would not otherwise be entitled to consideration under paragraph (a) of this section.

37 C.F.R. § 1.258 (1981).

In 1975, that same rule, in part, provided: ... A party shall not be entitled to raise such nonpatentability unless he has duly presented a motion for dissolution under § 1.231 upon such ground or shows good reason (e.g., that such nonpatentability became evident as a result of evidence extrinsic to an involved application) why such a motion was not presented; however, to prevent manifest injustice the Board of Patent Interferences may in its discretion consider a matter of this character even though it was not raised by motion under § 1.231 ....

37 C.F.R. § 1.258(a) (1969). Although dissimilar in wording, the 1975 and 1983 versions of Rule 258, as they relate to the issue pertinent here, are substantially identical. Under both versions of Rule 258, Brunswick had to file a motion during the motion period to preserve its right to pursue the fraud claim. Under either version, Brunswick having not filed a timely Rule 231 motion, could proffer a "good reason" to the Board for its failure to file a motion and then present its fraud claim. Last, under either version, Brunswick could have argued that its fraud claim had to be heard to prevent manifest injustice. The effect of both versions of Rule 258 is the same.

Brunswick's argument that the Board would not have permitted such a motion under the version of Rule 258 in effect in 1975 is erroneous. The case law after 1975, when the rule was the same, indi-

cates the contrary. *See, e.g., Phillips v. Matthews,* 197 U.S.P.Q. 776, 780 (Bd.Pat. Int.1977); *Johnson v. Bednar,* 201 U.S. P.Q. 778, 786 (Bd.Pat.Int.1976); *Carter v. Blackburn,* 201 U.S.P.Q. 544, 547 (Bd.Pat. Int.1976). Neither *In re Decision Dated Aug. 12, 1968,* 160 U.S.P.Q. 154 (Comm. Pat.1968), nor *Collard v. Brown v. Burignier,* 99 U.S.P.Q. 168 (Comm.Pat.1948), cited by Brunswick, persuade this court otherwise. Brunswick's additional citation to and argument under *Driscoll v. Cebalo,* 731 F.2d 878 (Fed.Civ.1984), is simply a mischaracterization of that case.

Turning to the second argument in support of the fraud claim, Brunswick asserts that it did in fact raise the fraud issue before the Board. Brunswick refers to its motion for production of documents, its list of witnesses and documents on which it intended to rely, certain deposition testimony included in the record and its final brief as evidence that it properly raised the fraud issue. However, the rules clearly require a motion during the motion period. Brunswick, not having followed the required procedure, could not raise the issue of fraud indirectly or by inference.

Brunswick's final argument supporting its fraud claim is that this court, in the exercise of its discretion, can hear that issue to prevent manifest injustice. Brunswick primarily relies on *Standard Oil Co. v. Montedison, S.p.A.,* 540 F.2d 611 (3d Cir.1976), *on remand,* 431 F.Supp. 1064 (D.Del.1977). *Standard Oil,* however, involved a very different set of facts than are present here. In that case, the petitioner sought to amend its § 146 proceeding complaint to add a claim for fraud on the patent office. Petitioner asserted that the new claim was based on new information uncovered since the original § 146 complaint had been filed with the district court. 540 F.2d at 615. Here, in contrast, the Board found that, "[t]he evidence which [Brunswick] relies upon for his fraud allegation was known to him prior to the declaration of this interference...." *Goodbar v. Klein,* 221 U.S.P.Q. 624, 631 (Bd.Pat.Int.

1983). *Standard Oil* is inapplicable to the situation here.

None of the arguments advanced by Brunswick are persuasive. Brunswick is barred from pursuing before this court its claim of fraud on the patent office. No evidence will be allowed on that issue.

As to Brunswick's claim of derivation, Brunswick urges that evidence be allowed on that issue in spite of the Board's holding. The Board stated, "based on the holdings that we have made on the questions already considered above, we deem it unnecessary to reach the question of derivation." *Goodbar v. Klein*, 221 U.S.P.Q. 624, 631 (Bd.Pat.Int.1983). Clearly, the Board did not decide the issue of derivation. The Board found it unnecessary to reach that issue because other already decided issues, such as the right to make issue, were dispositive. The Board did not reach the derivation claim and consequently that claim is not before this court. No evidence will be allowed on that issue.

In conclusion, then, new evidence on the right to make issue may be presented, provided that the proponent of the new evidence shows that the new evidence was unavailable in spite of the proponents due deligence. As to Brunswick's fraud and derivation claims, no evidence on those claims may be presented.

## MOTION TO COMPEL

A decision on Brunswick's motion to compel follows from the preceding discussions and holding. Rule 26 of the Federal Rules of Civil Procedure permits discovery of admissible material as well as inadmissible material "reasonably calculated to lead to the discovery of admissible evidence." Having decided that no evidence on the issues of fraud and derivation will be permitted, no discovery directed to those issues will be allowed.

This court has reviewed the disputed document requests made by Brunswick.[5] As to Requests 5, 6, 10 and 11, those requests

---

**5.** The disputed document requests made by Brunswick are as follows:

"5. All documents, whenever prepared or compiled, that relate or refer to, or depict, analyze, evaluate or describe the equipment, methods and/or techniques used or considered for use by Riegel to produce antistatic yarn subsequent to August 14, 1970, including any change in equipment, method or technique adopted by Riegel and the dates of such use.

6. All documents not produced under other paragraphs of this request which relate or refer to, or depict, analyze, evaluate or describe any mechanism such as eyelet, pigtail or spoon guides allegedly used by Riegel in guiding metal filaments relative to organic or natural fibers while both types of materials are simultaneously being fed through the draw rolls of a drawframe machine for drawing yarn and the means by which tension is placed on such materials during the drawing process, including any photographs, mechanical drawings, shop orders or purchase orders relating to such mechanisms or such means.

10. All documents which relate or refer to the purported invention of the method and apparatus for antistatic yarn production disclosed in Patent Application No. 63,755 filed on behalf of Goodbar and Pressley on or about August 14, 1970, including any drafts or such application and any comments or changes in such drafts prior to the submission of the application to the Patent Office. (See Klein Exhibit 12 in the Interference Proceeding.)

11. All documents prior to March 6, 1975 (the date of the declaration of interference No. 98,935) which relate or refer to any suggestion, comment, claim or charge that any claim in Riegel's patent No. 3,703,073 was or might be invalid or otherwise defective because the subject matter had been conceived or originated at Brunswick, rather than Riegel, including but not limited to, any meeting on or about January of 1973 between John Heimovics and D.J. Toomey of Pennie & Edmonds, Riegel's patent counsel. (See Joint Appendix, pp. 281 et seq., *Brunswick Corporation v. Riegel Textile Corporation,* case No. 84–1334 in the U.S. Court of Appeals for the Seventh Circuit.)

13. Retained copies of the 40 documents from Dr. Roger R. Varin's files attached to paper No. 153, of Goodbar's Motion for in camera review dated October 28, 1980, in interference proceeding No. 98,935 (see list attached and 599 F.2d 431).

16. All documents that relate or refer to antistatic yarn contained in files designated by "PE Case Numbers" as follows:

"015—Fabric with Static Electricity Dissipating Properties"

"018—Microwave Protective Fabric"

"019—Microwave Monitor for 'Riegelstat' fabrics"

(See Klein Exh. 13a in Interference Proceeding.)"

are directed exclusively to discovery of evidence relevant to the fraud and derivation issues and will not be allowed. As to Request 13, this court, on the record before it, is unable to determine the relevancy of those documents. Accordingly, that request is denied. As to Request 16, Riegel urges that responsive documents are subject to an attorney-client privilege. Riegel should identify the documents it claims are privileged so this court can rule on the applicability of the privilege.

Finally, Brunswick has requested that it be allowed to inspect and videotape the draw frames used by Riegel to produce antistatic yarn. Brunswick offers two reasons for allowing the videotaping; aiding the court's understanding and the relevance of the current process used by Riegel. The court declines to allow the videotaping on the first ground urged. Further, this court fails to see the relevancy of such videotaping in the proceeding where the issue is Brunswick's right to make the claims made in intereference. Brunswick's request for inspection and videotaping will be denied.

Having fully considered the matters before it, this court finds and it is hereby ordered that Riegel's motion for a pretrial ruling is granted, and Brunswick's motion to compel is granted in part and denied in part.